442 So.2d 1234 (1983)
Albert PARR, Individually and as Administrator of the Estate of Albert Parr, Jr.
v.
Claude HEAD, Robert Coppage and the Guaranty National Insurance Company.
No. 83-CA-458.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1983.
Fernand L. Laudumiey, III, Rudman, Howard, Laudumiey & Mann, New Orleans, for plaintiffs/appellees.
Arthur W. Landry, Beinvenu, Foster, Ryan & O'Bannon, New Orleans, for defendants/appellants.
Before BOUTALL, BOWES and GRISBAUM, JJ.
BOWES, Judge.
From a judgment of the district court in favor of plaintiff, and against all defendants, Robert Coppage and his insurer, Guaranty National Insurance Company, appeal. Head has not appealed, nor answered this appeal, so his liability and that portion of the judgment against him is not at issue. We reverse that portion of the judgment insofar as it finds Coppage and Guaranty liable unto plaintiffs for damages.
Claude Head is the lessee of a house which was owned by Robert Coppage, now deceased. Robert Coppage had a policy of owners', landlords' and tenants' liability insurance for the premises, issued by Guaranty National. On May 7, 1980, Albert Parr, Jr., accompanied by a friend, Ronnie Raines, entered the yard of the premises occupied by Mr. Head. The two boys played miniature golf with Mr. Head's daughter for about 15 minutes. At that time, a dog owned by Mr. Head's daughter broke out of his enclosure and attacked Albert. The dog took a bite on the boy's calf, leaving a chunk missing out of his leg and a noticeable scar.
The landlord's liability was alleged to be founded on his: "Leasing premises to an *1235 individual who is the owner of an animal with known dangerous propensities." Coppage died prior to trial and his Estate was evidently substituted as a defendant, although no pleadings to this effect appear in the record.
In its reasons for judgment, the district judge based his finding of liability on the part of Coppage, the lessor, on the fact, established at trial, that he had not inspected his property for 10 years, and that "the strict liability ascribed to the dog owner also attaches to the landlord in this case, for there was negligence on the part of the property owner in not inspecting his property for 10 years, and this negligence, however slight, places him, the landowner, in a posture wherein he shares with the dog owner the liability for the damage inflicted on Albert Parr."
The trial judge, in this portion of his judgment, apparently states two different bases of liabilitystrict liability under Civil Code Article 2321, and under a negligence theory of Civil Code Articles 2315 or 2316. Plaintiff, on the other hand, offers a theory of liability premised on the allegation that the defendant Head, the lessee of Coppage, was in reality a "real estate manager" for the defendant Coppage and, as such, indemnified under the property owner's liability policy.[1] We shall address these issues separately.
Can the strict liability of the defendant-dog owner "attach" to the landlord? There is no basis in our jurisprudence which would lead us to so conclude. Our Supreme Court has interpreted the applicable Civil Code articles to mean that the liability of the animal owner is in the nature of strict liabilitythe master of the animal is presumed to be at fault. Holland v. Buckley, 305 So.2d 113 (La.1974). Liability arises solely from the legal relationship between the owner and the animal. The existence of this liability follows the animal into the custody of a third person. It is not necessary that the owner of an animal also have control or "garde" of the animal. Rozell v. Louisiana Animal Breeders Cooperative, et al., 434 So.2d 404 (La.1983).
The underlying reason for the owner's liability is that, as between him who created the risk of harm and the innocent victim thereby injured, the risk-creator should bear the loss. He maintains the animal for his own use or pleasure. Holland, supra

This reasoning alone relieves the landlord from liability to a third person for the injuries caused by his lessor's animal. The landlord obtains no profit or pleasure from the existence of the risk; in this case, the dog. While a landlord is strictly liable for injuries caused by vices or defects of the building[2], he enjoys the benefit of ownership of which this liability is a concomitant. There is no such benefit in the case of a non-owner for us to impose strict liability in the present case. To analogize the problem, where would there be equity in the imposition of strict liability upon a lessee for injuries to a third person caused by a defect in the occupied building? Barring creation of, or knowledge of the defect, which is an altogether different basis of liability, no social purpose is served, nor is there a balancing of interests. The strict liability of the animal owner under C.C. art. 2321 cannot be imputed to a non-owner.
There could, however, be a basis for a finding of negligence on the part of the landlord under Articles 2315 or 2316. The trial judge found that failure to inspect the premises for a period of 10 years was negligence, which was sufficient to hold the landlord liable. While the Civil Code states an obligation to repair and maintain leased premises, it does not require periodic inspections by the lessor. The duty is maintenance of the premises in a safe and habitable *1236 condition. We decline to create a duty to inspect, under the circumstances presented here, although it is clear that a property owner, encumbered with the strict liability of Civil Code article 2695, would exercise wise caution to conduct periodic inspections of his property.
However, the determination of whether the conduct complained of bears a causal connection in fact to the occurrence of the accident is properly made without reference to those policy considerations required when ascertaining liability by the duty-risk approach. Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976). If the plaintiff can show that he probably would not have suffered the injury but for the defendant's conduct, he has carried his burden of proof relative to cause in fact.
We do not find that any inspection of the residence would have prevented plaintiff's injury. Had Mr. Coppage examined his property, he would have seen the animal and the enclosure built for the dog. According to the testimony, the enclosure was fence-high. The dog was kept in the enclosure when children played in the yard. There were apparently warning signs (these were originally posted to caution against dogs previously owned by the Heads, not the dog in question). Nevertheless, they were there and served to warn about this dog also.
In short, unless the dog was unusually large or displayed vicious propensities at the time of the inspection, Coppage would have seen only a family pet cared for with sufficient precautions. While such precautions do not exonerate the pet owner, they suffice to preclude a finding of negligence on the part of the lessor. There was no showing that Coppage had actual knowledge of the dog's existence, much less any dangerous tendencies. An inspection by the landlord would have revealed only the presence of the dog, and not its disposition. Thus we find that any failure to inspect on the part of Coppage was not causally related to the injury and is therefore not actionable. Shelton, supra.
Plaintiff argues most strenuously that Guaranty National Insurance Company should be held liable under the "real estate manager" clause, referred to hereinabove. There was no contest at trial about the fact that Coppage never visited the property in question and that, at the inception of the lease, Head agreed to make all repairs on the house. In return for this agreement, Coppage would not increase the rent. The arrangement was mutually satisfactory for 10 years.
Claude Head testified that if something was wrong, he would inform Coppage, and then proceed to repair it. Also, in such things as a new sink, new toilet, interior and exterior painting, all labor and costs were borne by the Heads. Plaintiff contends such were major projects, outside the scope of ordinary and necessary repairs, and so put the Heads beyond the position of mere lessees.
We are of the opinion that the Heads and Coppage merely contracted for terms which are at variance with the Civil Code articles. Rather than calling upon the landlord to make the necessary repairs, or withholding certain amounts paid for repairs from the rent (CC articles 2293 and 2294), the lessor and lessee elected to have a different arrangement.
While the lease and the codal articles may conflict, the articles are not prohibitory laws which would be unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessees, when there is no contractual stipulation in the lease. General Leasing Co. v. Leda Towing Co., Inc., 286 So.2d 802 (La.App. 4th Cir.1974). Unless there was some attempt to derogate from the force of laws for the public order (for example, an attempt to relegate the landlord's strict liability to the lessee) the parties can renounce the laws in their favor, if the rights of others are not affected.[3]
We find that defendant Head did not become a manager of the defendant Coppage, *1237 but was merely a lessee on somewhat uncommon terms. In addition, we are not convinced that the repairs were so extraordinary as remove them from the realm of ordinary and necessary repairs.
For the foregoing reasons, that portion of the judgment finding Robert Coppage and Guaranty National Insurance Company liable to plaintiff for damages is reversed. Each party is condemned to pay his own costs on appeal.
REVERSED IN PART.
NOTES
[1] The policy, introduced into evidence by the plaintiff, states in pertinent part:

II. PERSONS INSURED
... (d) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured; and ...
[2] C.C. Art. 2322.
[3] C.C. Art. 11.