580 So.2d 962 (1991)
Christine L. COMPAGNO and Richard W. Compagno, Natural Tutrix and Undertutor Respectively, of Their Minor Children, Nicole A. Compagno and Angelique M. Compagno
v.
Michael J. MONSON, Cecelia Galiber, Shirley LeBlanc Maurice J. LeBlanc, Jr., and State Farm Fire and Casualty Company.
No. 90-CA-820.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1991.
James B. Guest, Kenner, for plaintiffs/appellants.
Raymond A. Pelleteri, Jr., Ward & Clesi, New Orleans, for defendants/appellees.
Before GRISBAUM and WICKER, JJ., and FINK, J. Pro Tem.
WICKER, Judge.
This appeal arises from a suit for damages filed on behalf of Christine L. Compagno and Richard W. Compagno, the respective natural tutrix and undertutor of Nicole and Angelique Compagno. The plaintiffs/appellants brought an action against defendants Michael J. Monson, Cecelia Galiber, Shirley LeBlanc, Maurice LeBlanc, Jr., and State Farm Fire and Casualty *963 Company for injuries sustained from an attack by a dog. The dog was owned by Monson and Galiber who were tenants of Shirley LeBlanc and Maurice LeBlanc, Jr. State Farm was sued as insurer of Mr. and Mrs. LeBlanc. After a jury trial the trial judge rendered a judgment in conformity with the jury verdict. Judgment was rendered in favor of plaintiffs against defendants, Michael Monson and Cecelia Galiber in solido for a total of $50,531.00. However, the jury found no fault on the part of Shirley LeBlanc, Maurice J. LeBlanc, Jr., and State Farm. The trial judge dismissed these defendants from the suit with prejudice. Plaintiffs/appellants appeal only that portion of the judgment dismissing State Farm, Maurice LeBlanc, Jr. and Shirley LeBlanc from suit. We affirm.
Appellants only specify the following error:
The trial court erred when it failed and refused to instruct the jury on negligence.
The trial judge gave the following jury instructions relative to the liability of a property owner:
The duty of a property owner, and/or owner of a building, and or a lessee is governed by the following law:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
Accordingly, in order to recover in strict liability against the owner/lessor of a building, the injured person must prove that the building or its fences posed an unreasonable risk of injury to others, and that the damage occurred through this risk.
The fact that the fault, if found, is not intentional, does not excuse the animal owner or fence owner from that fault.
Further instructions on proximate cause were given.
Plaintiff's counsel objected to the failure of the trial judge to give a negligence instruction. He initially stated, "The plaintiff wishes to object to the jury charges simply to the extent that they do not include a reference to the landlord's duty to maintain his property in a reasonably safe condition ... And that's the only objection." He later emphasized he objected to the omission of a negligence instruction since he pled such a cause of action. He asserted he produced evidence of a negligence cause of action during the trial. However, at trial plaintiffs' counsel did not specify which of his 10 special charges on negligence he wished to go before the jury.
In the instant case plaintiffs' counsel made an "en globo" objection of the court's denial of their several special charges on negligence. It is only on appeal that plaintiffs have specified which of the jury charges they wanted to go before the jury, and the grounds for their objection. They did not comply with the provisions of La.C. Civ.P. art. 1793. In an earlier case before this court in which plaintiffs made an "en globo" objection, we held:
In order to preserve the right to appeal from the failure to give requested instructions or the giving of an improper instruction, a litigant adversely affected must state specifically the matter which he finds objectionable and the grounds for his objection to the jury instructions [citations omitted].
Bechtel v. Entringer Bakeries, Inc., 422 So.2d 1299, 1302 (La.App. 5th Cir.1982).
The reason for the language in La.C. Civ.P. art. 1793 that the party "stat[e] specifically the matter to which he objects and the grounds of his objection" was explained in Wimbish v. Hamilton, 47 La.Ann. 246, 16 So. 856, 858 (La.1895) when the Supreme Court stated it could not be expected to go through the "en globo" charges and "declare which were correctly asked, and which were correctly refused." Nevertheless, even assuming counsel had preserved his objection for appeal we find no abuse in the trial judge's discretion in his failure to instruct the jury on negligence.
The testimony at trial established Mr. and Mrs. LeBlanc leased a double to Monson and Galiber. The parties executed a written 12-month lease which had a "no pets" provision. Both Mr. and Mrs. LeBlanc *964 denied knowledge of their tenants' having a dog. Their tenants, Galiber and Monson, testified Mrs. LeBlanc was aware they owned a black labrador dog weighing 50 to 60 pounds and that she was willing to have the dog remain if kept outside.
The tenants/dog owners stated the dog had never bitten anyone until the date of the present incident. Monson testified he had no reason to believe the dog would harm children.
Christine Compagno testified that on the date of the incident her children, Nicole and Angelique, were playing with Galiber's children, Michael and Corey. Nicole and Angelique were six years and four years of age, respectively. Galiber stated her children were three years and four years of age at the time. Nicole Compagno testified she was playing with Corey when the dog attacked her. Corey opened the gate to the backyard by lifting the latch. The children were entering the backyard to play in the "doghouse" or shed. Angelique Compagno stated the dog first attacked Nicole and then jumped on her and knocked her down.
Monson testified the dog had previously escaped from the backyard when a tree fell on the fence. The fence was subsequently repaired by workers thought to be hired by Mr. LeBlanc. The dog had also escaped before the date of the dog bite incident by lifting the latch on the gate. After that escape Monson installed a padlock. However, he never locked the padlock since he frequently went into the backyard to feed the dog. The use of the padlock prevented the dog from lifting the latch.
Galiber stated she believed the padlock was on the gate before the attack because it had always been there. She did not recall seeing the padlock after the incident but she did not look for it. Monson was positive the padlock was on the gate. He stated, "[s]omeone had to open [the gate]."
Fred Vanderbrook, an expert in the field of mechanical engineering, testified he was contacted in March 1988 by State Farm to examine the premises. He was specifically asked to examine the fence and the gate.
He described the gate as follows:
[It had] a wish bone type latch ... the type that most children know how to open. It did have the eyelet in it, such that somebody could install a bolt or a pin ... even a padlock to prevent children from getting into the fence.
He believed the yard and fence were "suitable for containment of most dogs." If a padlock were placed in the pinhole of the latch a dog could not "nose" it up.
Appellant relies on our decision in Parr v. Head, 442 So.2d 1234 (La.App. 5th Cir. 1983) for the proposition that an action for negligence could lie against a landlord for a tenant's dog biting a third party. However, although we stated in dicta that an action in negligence could lie against a landlord we "decline[d] to create a duty to inspect" under the factual circumstances presented. Id. at 1236.
In Parr we further noted that any failure to inspect was not causally related to the third party's injury.
During oral argument plaintiffs' counsel stressed we relied on the presence of warning signs in the Parr case. It is true we mentioned the presence of warning signs; however, we stressed:
There was no showing that [the landlord] had actual knowledge of the dog's existence, much less any dangerous tendencies. An inspection by the landlord would have revealed only the presence of the dog, and not its disposition. Thus we find that any failure to inspect on the part of [the landlord] was not causally related to the injury and [was] therefore not actionable. [citation omitted].
Id. at 1236.
Similarly, an inspection by the landlords in the present case would only have revealed the presence of a dog "and not its disposition [toward] dangerous tendencies". Id. There is no evidence the dog was dangerous before the dog bite in question.
The general law is stated in the Restatement of The Law on Torts, RESTATEMENT (SECOND) OF TORTS Section 514 (1977) at 24:
One who, although not in possession, harbors a wild animal or an abnormally *965 dangerous domestic animal, is subject to the same liability as if he were in possession of it.
The comment to Section 513 provides in pertinent part as follows:
a. The rules that determine the liability of one who as possessor keeps a wild animal or an abnormally dangerous domestic animal are stated in Sections 507-513. The rule stated in this Section imposes the same liability upon one who, although neither the owner nor the possessor of the animal, harbors it by making it part of his household. This he may do by permitting a member of his household, including those servants who are regarded as members, to keep the animal either in the house or on the premises that are occupied as the home of the family group of which he is the head. Thus a person harbors a dog or cat by permitting his wife, son or household servant to keep it in the house or on part of his land that is occupied by the family as a group. On the other hand, the possession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal. Thus a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power or even if he presents the dog to his son to be so kept. The same is true when a master permits his servant to keep a dog in a house or part of the premises that is given over to the exclusive occupation of his servant. So, too, he does not become a harborer of a dog that he permits a friend to keep on his land unless he takes it into his home and thus makes it, as it were, a member of his household. Similarly, a shopkeeper does not harbor dogs that he permits his customers to bring into his shop, nor does the permission given to a particular motorist or to motorists in general to camp on a part of the possessor's land make him the harborer of those animals which, as he knows, the motorists are likely to bring upon the land.
b. In order that the head of a household may harbor a dog or other animal it is not necessary that he assume control of it. He may harbor a dog although he permits his wife, son or servant who is its owner to have exclusive control over it or may even agree that he himself shall exercise no control over the animal.
Id. at 24-25.
The general rule is as follows:
[the] landlord may not be found liable for injuries to a third person occasioned by a vicious or dangerous animal kept by a tenant on premises within the tenant's exclusive control[.]
Annot., 81 A.L.R.3d 638, 641 (1977).
The Minnesota Supreme Court declined to impose liability and reasoned that the imposition of liability on a landlord who neither owns nor harbors a dog is a policy decision more appropriately addressed by the legislature. Gilbert v. Christiansen, 259 N.W.2d 896 (Minn.1977) at 898. The Gilbert court cautioned at 898 that imposing such liability:
would render it difficult, either through unavailability or prohibitive cost, for prospective tenants with dogs to find housing.
See also Strunk v. Zoltanski, 62 N.Y.2d 572, 479 N.Y.S.2d 175, 468 N.E.2d 13 (1984) (Kaye, J., dissenting).
However, there have been some recent exceptions to the general rule. Vigil By And Through Vigil v. Payne, 725 P.2d 1155 (Colo.App.1986). The Payne court explained at 1157:
[where] a landlord has actual knowledge that a tenant owns an animal whose vicious actions have created a clear potential for injury, the landlord has a duty to take reasonable precautions to protect third persons from the animal. However we specifically limit that duty of care to those instances in which the landlord has actual knowledge of the vicious actions of the animal before entering into a rental agreement with the animal's owner and nevertheless subsequently performs the affirmative act of entering into a *966 rental agreement with the animal's owner.
In McCullough v. Bozarth, 232 Neb. 714, 442 N.W.2d 201, 208 (1989) the Nebraska Supreme Court reviewed the national jurisprudence and ultimately held:
as a general rule, a landlord is liable for injuries caused by the attack of a tenant's dog only where the landlord had actual knowledge of the dangerous propensities of the dog and where the landlord, having that knowledge, nevertheless leased the premises to the dog's owner or, by the terms of the lease, had the power to control the harboring of a dog by the tenant and neglected to exercise that power.
New York is another jurisdiction which recognizes an exception when the landlord knows the tenant owns a vicious dog and does not take reasonable care to protect third parties from injury. Strunk v. Zoltanski, 62 N.Y.2d 572, 479 N.Y.S.2d 175, 178, 468 N.E.2d 13, 16 (1984). Nevertheless, New York takes the position that although the landlord:
[knew] of the existence of a dog, it did not create a duty to inquire further. Such a burden would be oppressive and unreasonable.
Georgianna v. Gizzy, 126 Misc.2d 766, 483 N.Y.S.2d 892, 894 (N.Y.Sup.Ct.1984).
In Georgianna the landlord had no actual knowledge of the vicious propensities of the dog. Although there was a previous dog bite report filed with the Department of Health the Georgianna court did not hold the landlord to a duty of searching public records. In Florida actual knowledge is required and even a "dog with a trace of pit bull ancestry is [not] deemed vicious." Olave v. Howard, 547 So.2d 349, 350 (Fla.App. 3 Dist.1989).
Furthermore, just as in Parr, supra, California does not impose a duty on the part of the landlord to inspect in order to discover a dangerous animal. Uccello v. Laudenslayer, 44 Cal.App.3d 504, 118 Cal.Rptr. 741, 748 (1975).
The Uccello court held at 118 Cal.Rptr. 748:
It should be emphasized that a duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities. Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that actual knowledge and not mere constructive knowledge is required. For this reason we hold that a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise. [footnote omitted; emphasis in original].
Our Third Circuit has held:
The mere presence of dogs belonging to a tenant do[es] not constitute "vices and defects" of the leased premises so as to make the owner liable to others for injuries caused by the tenant's dogs. Karu v. Lavergne, 255 So.2d 483 (La.App. 1st Cir.1971), writ denied 260 La. 703, 257 So.2d 156 (1972).
Boettger v. Early American Ins. Co., 469 So.2d 495, 498 (La.App. 3rd Cir.1985).
In the instant case the record is devoid of any evidence the landlords had actual knowledge of the dog's vicious propensity. Thus, even under the recent exception to the imposition of liability created by some jurisdictions we would be compelled to conclude that liability for a negligence cause of action would not lie under these circumstances.
Plaintiffs also argue in brief that the shed was an attractive nuisance. The uncontradicted testimony is that the children were going into the backyard to play in the "doghouse"/shed. However, it is also uncontroverted that the children were injured by the dog. There is no evidence the shed was inherently dangerous. We have previously held:
unless a hidden trap or inherently dangerous instrumentality peculiarly attractive to children exists, there can be no *967 application of the doctrine [of attractive nuisance].
Nguyen v. Crescent Land & Development, 527 So.2d 456, 458 (La.App. 5th Cir.1988), writ denied, 532 So.2d 769 (La.1988). Therefore, the trial judge did not abuse his discretion in refusing to charge the jury with the attractive nuisance doctrine.
Accordingly, for the reasons stated the judgment dismissing plaintiffs' claims against Mr. and Mrs. LeBlanc and their insurer, State Farm, is affirmed at appellants' cost.
AFFIRMED.
GRISBAUM, Judge, concurring with written reasons.
I concur. The trial court was imminently correct in its jury instructions as per our rationale in Parr v. Head, 442 So.2d 1234 (La.App. 5th Cir.1983). Under the circumstances presented here, I see no cause of action in negligence against the landlords.