Roland v. LeBlanc                    CV-93-312-SD  10/11/95
                UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Carol E. Roland

     v.                                    Civil No. 93-312-SD

Richard LeBlanc;
Nancy LeBlanc

                         O R D E R

     In this diversity action, plaintiff Carol E. Roland asserts

a claim of negligence for injuries sustained after she was bitten

by a pit bull dog owned by a tenant in defendants Richard and

Nancy LeBlanc's rental dwelling.[1]

     Presently before the court is defendants' motion for summary

judgment, to which plaintiff objects.[2]


                        Background

     On November 27, 1991, Karen Shortell's mixed breed pit bull,

Red Dog, attacked and seriously injured plaintiff while she was

visiting in Shortell's living room.  When Shortell intervened to

_____

     [1]Plaintiff originally filed additional claims for common law
strict liability (Count II) and statutory strict liability (Count
III), which she has now withdrawn.  See Plaintiff's Objection to
Defendants' Motion for Summary Judgment ¶ 6.

     [2]Also before the court is plaintiff's motion to amend the
complaint (document 27), to which defendants have not objected.
The motion is herewith granted, and the amended complaint is to
be docketed as of the date of this order.

help, Red Dog attacked and injured her as well. At the time of the incident, plaintiff and Shortell were both tenants in the LeBlancs' building.

Shortell moved into her apartment in June of 1990, accompanied by Red Dog and a second pit bull dog named Precious. See Deposition of Karen Shortell at 9, 18 (attached as Exhibit 1 to Plaintiff's Memorandum of Law). The parties appear to agree that Shortell was a month-to-month tenant, whose lease was therefore terminable by either side upon one month's notice. See Defendants' Memorandum of Law at 16; Plaintiff's Memorandum of Law at 12, 13.

Shortell asserts that, prior to moving in, she informed the LeBlancs and their rental agent that she owned two pit bull dogs. Shortell Deposition at 19, 63; November 21, 1992, Certification[3] of Karen Shortell ¶ 2 (attached as Exhibit 5 to Plaintiff's Memorandum of Law). Although Richard LeBlanc assured Shortell that she could keep the dogs in the apartment, 11/92 Shortell Certification ¶ 2, Nancy LeBlanc was more concerned and telephoned Shortell to ask that she not move in because of the bad reputation of pit bulls, see Shortell Deposition at 21. Nancy LeBlanc permitted Shortell to move in after Shortell told

_____

[3]For purposes of summary judgment, the court will treat the plaintiff's submissions of "certifications" as affidavits.

her the dogs were not dangerous.[4]  See 11/92 Shortell Certification ¶ 2.  Shortell and Nancy LeBlanc also agreed that, in exchange for a reduction in rent, Shortell would assume management duties of the apartment building, which included rent collection and general maintenance.  Id. ¶ 3.

Over the course of the following months, the LeBlancs remained aware of the dogs' presence.  On one occasion when the LeBlancs visited Shortell in her apartment, she had to put the dogs away because Nancy LeBlanc was frightened by them.  See Shortell Deposition at 63, 64.  Furthermore, on one of Richard LeBlanc's visits to Shortell's apartment, Red Dog charged LeBlanc from the other side of the front door.  See February 16, 1995, Certification of Karen Shortell ¶ 4.  LeBlanc could see the dog approach because the door was partially made of clear glass.  Id.

In or about June of 1991, after receiving complaints from other tenants concerned by the dogs' barking and by the fact that pit bulls have a reputation for viciousness, Richard LeBlanc asked Shortell to either remove the dogs from the premises or move out.  See Interrogatory Answers of Richard LeBlanc ¶¶ 43(c),

_____

[4]From the beginning, the LeBlancs were allegedly aware that the two dogs had distinct temperaments.  See 11/92 Shortell Certification ¶ 4.  Whereas Precious had a "sweet disposition" and was "exceptionally friendly," Red Dog was "especially protective" of Shortell and had a frightening look about him. See Shortell Deposition at 20; Deposition of Tammy Mills at 9 (attached as Exhibit 2 to Plaintiff's Memorandum of Law).

3

43(f) (attached as Exhibit 7 to Plaintiff's Memorandum of Law); Deposition of Richard LeBlanc at 61, 62, 78 (attached as Exhibit 4 to Plaintiff's Memorandum of Law). Despite this request, defendants neither inspected the premises to determine whether the dogs had actually been removed nor followed through on the demand. See R. LeBlanc Deposition at 62-63; Deposition of Nancy LeBlanc at 29 (attached as Exhibit 9 to Plaintiff's Memorandum of Law).

Then, in November of 1991, approximately two weeks prior to the attack on plaintiff, Red Dog attacked and injured another woman, Tammy Mills, in Shortell's living room. See Mills Deposition at 17-18, 20-21. When Shortell learned of this attack, she allegedly told Mills that she intended to place Red Dog on medication because he was exhibiting aggressive behaviors. Id. at 38. At about this time, Shortell believes she posted a "Beware of the Dog" sign. See Shortell Deposition at 67, 68; Deposition of Carol Roland at 58 (attached as Exhibit 6 to Plaintiff's Memorandum of Law). The record is unclear, however, as to whether defendants had actual knowledge of Red Dog's attack on Mills.

4

<u>Discussion</u>

<u>1.  Summary Judgment Standard</u>

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  <u>Stone & Michaud Ins., Inc. v. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case."  <u>Celotex Corp. v. Catrett,</u>, 477 U.S. 317, 322-23 (1986).  It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'"  <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993) (quoting <u>Anderson</u>, <u>supra</u>, 477 U.S. at 256), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1398 (1994).  Rather, to establish a trial-worthy issue, there must be enough

competent evidence "to enable a finding favorable to the non-

5

moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255.

## 2. Existence of a Duty of Care

Plaintiff alleges that defendants were negligent when they permitted Red Dog to remain unrestrained on the premises and when they generally failed to take precautions to protect her from the animal's vicious propensities. See Amended Complaint ¶ 12. Defendants in turn argue that they owed no common law duty to third parties to protect them from being injured by a tenant's dangerous dog. See Defendants' Memorandum of Law at 13.

In New Hampshire, a landlord possesses a general duty in tort "to act as a reasonable person under all the circumstances." Walls v. Oxford Management Co., 137 N.H. 653, 657, 633 A.2d 103, 105 (1993) (citing Sargent v. Ross, 113 N.H. 388, 397, 308 A.2d 528, 534 (1973)). Such duty depends on "the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk." Sargent, supra, 113 N.H. at 397, 308 A.2d at 534.

With Sargent, the New Hampshire Supreme Court abandoned the

6

traditional approach to landlord tort liability of affording immunity except in certain narrowly proscribed circumstances. Id., 113 N.H. at 390-99, 308 A.2d at 530-35. In place of the earlier standards, which often required a determination of whether the landlord exercised control over the area containing the defect,[5] the court substituted principles of "ordinary negligence" wherein a landlord or landowner must take "whatever precautions are reasonably necessary under the circumstances to reduce the likelihood of injuries from defects in his property." Id., 113 N.H. at 399, 308 A.2d at 535.[6] According to the court, such standard "'will provide the most effective way to achieve an allocation of the costs of human injury which conforms to present community values.'" Id., 113 N.H. at 398, 308 A.2d at 534 (quoting Mounsey v. Ellard, 297 N.E.2d 43, 52 (Mass. 1973)).

Sargent, although instructive, does not specifically address

---

[5]Previously, a landlord could be liable for defective or dangerous conditions in the premises only if the injuries were attributable to: (1) a hidden danger of which the landlord but not the tenant was aware; (2) premises leased for public use; (3) premises retained under the landlord's control, such as common stairways; or (4) premises negligently repaired by the landlord. Sargent, supra, 113 N.H. at 392, 308 A.2d at 531.

[6]Thus, in Sargent, the court found the landlord was liable to a third party who died after falling down an unreasonably steep staircase, despite the fact that the landlord had surrendered control of the premises to the tenant. Sargent, supra, 113 N.H. at 393-400, 308 A.2d at 532-34.

7

the issue presented here: whether a landlord owes third persons a duty of care to protect them from dangerous animals in the care of a tenant.[7] As such, it becomes incumbent on the federal court to gauge how the state's highest tribunal would likely resolve this matter, <u>Kathios v. General Motors Corp.</u>, 862 F.2d 944, 949 (1st Cir. 1988), taking cues from "such sources as analogous state court decisions, adjudications in cases elsewhere, and public policy imperatives," <u>id.</u>

Although the general rule elsewhere is that a landlord does not owe such a duty of care, <u>see</u>, <u>e.g.</u>, <u>Compagno v. Monson</u>, 580 So. 2d 962, 965 (La. Ct. App. 1991); Danny R. Veilleux, Annotation, *Landlord's Liability to Third Person for Injury Resulting from Attack on Leased Premises by Dangerous or Vicious Animal Kept by Tenant*, 87 A.L.R. 4th 1004, 1012 (1991),[8] numerous

---

[7]New Hampshire law is well developed regarding the duties of a dog's owner or keeper. Such person is strictly liable for harm caused by his dog's vicious or mischievous acts. New Hampshire Revised Statutes Annotated 466:19 (1992); <u>Allgeyer v. Lincoln</u>, 125 N.H. 503, 506, 484 A.2d 1079, 1081 (1984). A plaintiff may also maintain a common law negligence claim against a dog owner, provided that the owner "knew or should have known that his dog had vicious propensities." <u>Wike v. Allison</u>, 105 N.H. 393, 394, 200 A.2d 860, 862 (1964).

[8]One rationale for the "no duty" rule is that the legislature, rather than the courts, should decide this issue because the indiscriminate imposition of liability on a landlord would "render it difficult . . . for prospective tenants with dogs to find housing." <u>Compagno</u>, <u>supra</u>, 580 So. 2d at 965 (citing <u>Gilbert v. Christiansen</u>, 259 N.W.2d 896, 898 (Minn.

jurisdictions recognize an exception to this general "no duty" rule where the landlord has both knowledge of a vicious dog's presence on the premises and some power to control or remove the animal, <u>see</u>, <u>e.g.</u>, <u>Brotko v. United States</u>, 727 F. Supp. 78, 83 (D.R.I. 1989) (reviewing jurisdictions that recognize this exception). <u>Accord</u> <u>Uccello v. Laudenslayer</u>, 118 Cal. Rptr. 741, 748 (Cal. Ct. App. 1975) (emphasizing the necessity of actual, as opposed to constructive, knowledge as a prerequisite to liability); <u>Vasques <i>ex rel</i>. Rocha v. Lopez</u>, 509 So. 2d 1241 (Fla. Dist. Ct. App. 1987); <u>Compagno</u>, <u>supra</u>, 580 So. 2d at 966 (noting trend); <u>McCullough v. Bozarth</u>, 442 N.W.2d 201, 208 (Neb. 1989); <u>Dixon v. Frazini</u>, 592 N.Y.S.2d 208 (N.Y. App. Div. 1992); <u>Cronin v. Chrosniak</u>, 536 N.Y.S.2d 287, 288 (N.Y. App. Div. 1988) (landlord could be liable for injuries arising from encounter with tenant's pit bull where evidence showed that landlord was aware of animal's vicious tendencies and that he could have terminated month-to-month tenancy); <u>Parker v. Sutton</u>, 594 N.E.2d 659, 662 (Ohio App. 3d 1991); <u>Palermo v. Nails</u>, 483 A.2d 871, 873 (Pa. Super. Ct. 1984); <u>see also</u> <u>Donchin v. Guerrero</u>, 41 Cal. Rptr. 2d 192 (Cal. Ct. App. 1995) (applying similar standard of care to landlord, where third party was injured off the rental

---

1977)).

9

property); <u>Park v. Hoffard</u>, 847 P.2d 852 (Or. 1993) (same); <u>Vigil ex rel</u>. <u>Vigil v. Payne</u>, 725 P.2d 1155, 1157 (Colo. Ct. App. 1986) (limiting duty to when landlord has actual knowledge of animal's viciousness <u>prior to</u> entering into rental agreement); <u>Lucas v Kriska</u>, 522 N.E.2d 736, 737 (Ill. App. Ct.) (plaintiff must show property owner had prior knowledge of dog's viciousness), <u>appeal denied</u>, 530 N.E.2d 248 (1988); <u>Szkodzinski v. Griffin</u>, 431 N.W.2d 51, 52 (Mich. Ct. App. 1988) (same).

In <u>Uccello</u>, the court reasoned that a landlord's knowledge of a dangerous animal on the premises, coupled with the ability to eliminate the hazard, required the imposition of a duty of ordinary care. "To permit a landlord in such a situation to sit idly by in the face of the known danger to others must be deemed to be socially and legally unacceptable." <u>Uccello</u>, <u>supra</u>, 118 Cal. Rptr. at 746. The <u>Uccello</u> standard, and its reasoning, essentially tracks the concepts of ordinary negligence as applied in New Hampshire which require the court to consider both the foreseeability of injury and the landlord's ability to reduce the risk.

In contrast, the jurisdictions that have declined to follow <u>Uccello</u> have done so largely because, unlike New Hampshire, they subscribe to the notion that a landlord has no duty to exercise reasonable care with respect to premises in the tenant's

10

exclusive possession.  <u>Goddard</u> *ex rel.* <u>Goddard v. Weaver</u>, 558 N.E.2d

853, 854 (Ind. Ct. App. 1990); <u>Mitchell v. Bazzle</u>, 404 S.E.2d

910, 911-12 (S.C. Ct. App.), <u>cert. dismissed</u>, 412 S.E.2d 416

(1991).  In other states, either a statute or the particular

state's common law precluded the court from following <u>Uccello</u>.

<u>See</u> <u>Ragsdale v. Harris</u>, 293 S.E.2d 475, 477 (Ga. Ct. App. 1982)

(specific statute on point); <u>Frobig v. Gordon</u>, 881 P.2d 226, 228

(Wash. 1994) (both Washington common law and statutory parallels

provide that landlord cannot be held liable for conditions

created by tenant).

Accordingly, the court is persuaded that the New Hampshire

Supreme Court would follow <u>Uccello</u> and its progeny, and thus

finds and rules that where a landlord is aware of a tenant's

animal's vicious propensities and possessed some ability to

prevent the attack, a common law duty of care arises in favor of

third parties who are injured by said animal.[9]

---

[9]In their motion for summary judgment, defendants rely upon <u>Richards v. Leppard</u>, 118 N.H. 666, 392 A.2d 588 (1978), to suggest that the Supreme Court of New Hampshire does not recognize a common law duty of landlords to protect third parties from a tenant's dangerous dogs.  In <u>Richards</u>, the court rejected the plaintiff's negligence claim against the owner of a home leased to the owner of the culprit dog.  A detailed summary of the factual circumstances alleged in <u>Richards</u> is not provided by the court; however, the court does state the plaintiff's primary allegation was that the lessor knew or should have known that the

## 3. Defendants' Knowledge of the Animal's Vicious Propensities and Their Ability to Reduce the Risk of Attack

Having found the common law of New Hampshire amenable to the negligence action presented herein, the court must now determine whether the evidence could support a jury finding (1) that the LeBlancs had actual knowledge of Red Dog's vicious nature and (2) that they could have abated the risk of harm.

### a. Actual Knowledge

When construed in a light most favorable to plaintiff, the

_____

dog would roam and be potentially dangerous. Thus it appears that (1) the plaintiff's case was based on the lessor's constructive knowledge and (2) the dog's attack occurred outside the tenant's premises.

In contrast, plaintiff in the case at bar has alleged both actual knowledge on the part of the landlord and that the incident occurred on the tenant's premises. As such, when viewed in a light most favorable to plaintiff, the allegations in the instant case are more likely to give rise to a duty than those alleged in Richards. See, e.g., Ny Tran v. Bancroft, 648 So. 2d 314, 315-16 (Fla. Dist. Ct. App. 1995) ("a landlord has no duty to prevent injuries to third parties caused by a tenant's dog away from [the] leased premises"); accord Ward v. Young, 504 So. 2d 528, 529 (Fla. Dist. Ct. App. 1987); Terrio v. Daggett, 617 N.Y.S.2d 585, 585 (N.Y. App. Div. 1994) (noting that landowners owed no duty of care where dog-bite incident did not occur on their property). But see Donchin, supra, 41 Cal. Rptr. 2d at 201 (landlord may be liable for off-site dog bites where dog's escape is due to a defect in the rental property); Park, supra, 847 P.2d at 852 (detailed discussion regarding landlord's liability for physical harm caused by tenant's dogs outside of rental property).

evidence shows that defendants were at least aware that Shortell kept pit bulls loose in her apartment. Shortell Deposition at 19, 63; 11/92 Shortell Certification ¶ 2. The evidence also shows that they knew that pit bulls as a breed have a reputation for being dangerous and that Red Dog's barking had disturbed and frightened neighboring tenants. Shortell Deposition at 21; R. LeBlanc Interrogatory Answers ¶ 43(c), 43(f); R. LeBlanc Deposition at 61, 62, 78. Moreover, Red Dog allegedly "charged" one of the defendants. 2/95 Shortell Certification ¶ 4. Finally, at the request of other tenants, defendants asked that Shortell remove the dogs. See R. LeBlanc Interrogatory Answers ¶ 43(c), 43(f); R. LeBlanc Deposition at 61, 62, 78.

The court finds and rules that these facts alone are sufficient for a jury to reasonably conclude that the landlords had knowledge of Red Dog's vicious nature. See, e.g., Giaculli v. Bright, 584 So. 2d 187, 189 (Fla. Dist. Ct. App. 1991) (evidence that landlord knew of pit bull's barking and lunging, "particularly in light of the characteristics of pit bulls," raised genuine issue of fact as to landlord's notice of its dangerous propensities); Dixon, supra, 592 N.Y.S.2d at 208 (summary judgment inappropriate where plaintiff's affidavits indicated landlord had observed Siberian Husky barking and growling); Strunk v. Zoltanski, 479 N.Y.S.2d 175 (N.Y. App. Div.

13

1984) (defendant witnessed dog barking and jumping while tied down).

b. Risk Abatement

It is likewise proper that the fact finder determine the issue of whether the landlords had sufficient ability to reduce the risks posed by Red Dog.[10] Construing all the evidence in a light most favorable to plaintiff, most of the evidence bearing on defendants' knowledge of Red Dog's dangerous nature occurred months before the dog attacked plaintiff. Therefore, a jury could find that defendants had both the capacity and sufficient time to take measures to protect plaintiff, such as by revoking Shortell's month-to-month tenancy or requiring that she restrain or remove the dogs.

Accordingly, the evidence as a whole creates a genuine issue of material fact as to whether defendants were aware of the seriousness of the risk posed by the continued presence of Red Dog on the premises, and as to whether they had the ability to take the appropriate measures to reduce this risk. Defendants'

---

[10]Defendants contend the evidence insufficiently demonstrates that Red Dog's attack was foreseeable, especially as they had no actual knowledge of any previous act of aggression. The court finds and rules that this is a question that is best decided by the trier of fact.

14

motion for summary judgment on plaintiff's claim for negligence (Count I) therefore must be and herewith is denied.

## Conclusion

For the reasons set forth herein, defendants' motion for summary judgment (document 15) is denied, and plaintiff's motion to amend the complaint (document 27) is granted. The amended complaint shall be docketed as of the date of this order.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

October 11, 1995

cc:  Edward M. Van Dorn, Jr., Esq.
     Gordon A. Rehnborg, Jr., Esq.

15