|-i STEWART, J.
The trial court rendered summary judgment in favor of defendants, Charles S. Clark and State Farm Fire & Casualty Insurance Co., on a coverage question arising under a State Farm rental dwelling policy. The incident triggering the coverage dispute occurred in May 2001, when six-year-old Kimberly Dempsey was bitten by a dog believed to have been owned by Charles C. Clark, the son of Charles S. Clark. At the time of the incident, the son was living in a house owned by the father and insured under the State Farm rental dwelling policy. For the reasons that follow, we affirm the trial court’s grant of summary judgment.
FACTS
On May 31, 2001, Kimberly Dempsey was playing in her front yard with her brother and another child when a dog allegedly belonging to Charles C. Clark bit *135 her and caused her to suffer facial injuries. On September 4, 2001, Kimberly’s mother, Tammy Dempsey, filed suit on Kimberly’s behalf against Charles C. Clark as the alleged owner of the dog, and against Charles S. Clark as the owner of the property occupied by Charles C. Clark and the dog. Tammy Dempsey also named State Farm as a defendant because State Farm issued a rental dwelling insurance policy to Charles S. Clark covering the property occupied by his son, Charles C. Clark.
The father and State Farm filed a motion for summary judgment in January 2002, asserting that the father had no care, custody, or control over the dog, and had no knowledge of any vicious propensities of the dog. The motion for summary judgment also argued that the rental dwelling insurance Impolicy issued by State Farm did not cover any acts or property of the son, and provided no liability coverage.
In support of the motion for summary judgment, movants attached the affidavit of the father in which he acknowledged that he owned the rental property and that his son and family had been renting it from him for over a year and a half. He also stated that before May 31, 2001, although he had been around the dog at issue on several occasions, he had never seen the dog exhibit any vicious or aggressive actions, and had no knowledge that the dog had any vicious propensities. He concluded his affidavit by stating that he never had care, custody, or control of the dog.
The movants also included a copy of the State Farm rental dwelling policy in support of the motion for summary judgment. Under the definitions in the policy, the word “insured” was defined to include not only the named insured, but also any employee of the named insured while acting within the scope of that employment, and any person or organization while acting “as real estate manager” for the named insured. Charles S. Clark and his wife, Sandra E. Clark, were both listed as the named insured on the policy. The son was not a named insured nor was he alleged to have been an employee of the named insured. Instead, the only issue concerning the definition of an “insured” for purposes of summary judgment was Dempsey’s argument against summary judgment that the son was acting as a “real estate manager” for the father so as to invoke coverage under the rental dwelling policy.
| oUnder the liability coverage section of the policy for “Coverage L-Business Liability,” the policy stated:
If a claim is made or suit is brought against any insured for damages because of bodily injury, personal injury, or property damage to which this coverage applies, caused by an occurrence, and which arises from the ownership, maintenance, or use of the insured premises, we will:
i. Pay up to our limit of liability for the damages for which the insured is legally liable....
As an alternative to the “real estate manager” argument, Dempsey argued that the son was not actually renting the residence from his father, but had free use of the residence so as to constitute constructive use of the house by the father, thereby triggering coverage under the above quoted language.
After the son’s and father’s depositions had been taken, the father and State Farm supplemented their memorandum in support of summary judgment and included copies of their depositions. The son’s deposition revealed that he and his wife first lived in the residence at issue as early as 1995 or 1996. The son stated that his father was “just buying the house and I was living in it — renting it from him.” The son and his wife then moved to *136 Shreveport where they stayed approximately a year and a half. The couple separated and the wife moved back into the house where she lived for several months before the couple reconciled. After their reconciliation, they stayed in the house until October 2001. The son acknowledged that from about January 2001 to October 2001 no rent was paid, but he stated that he or his wife had paid rent prior to that period of time. Three can-celled checks identified at the son’s depositions showed that payments of $450 each had been made to the father in September, October and |4Pecember 2001. The son indicated that he had not saved any bank statements other than the ones showing the three cancelled checks.
The son acknowledged that while he lived in the house he mowed the lawn and took care of “just minor stuff’ including baseboard work, putting new linoleum in the bathroom, and painting. He indicated that if there was a plumbing problem or electrical problem his father “would fix something like that.” The son also indicated that his father had never made any demand on him to pay back due rent, and that the son did not think that the father expected him to pay the back rent.
In the father’s deposition, he indicated that he purchased the property at issue in the summer of 1997 and began renting it shortly thereafter. He first rented the property to his son, although there was no written rental agreement. The son began paying $450 a month when he moved into the property. When asked if the son had made monthly payments to him each month since 1997, the father replied that the son did not live at the property “that whole time.” The father indicated that another renter by the name of David Long had rented the property for approximately one year, and then the son’s wife had rented the property from the father before the son and his wife reconciled. The father recalled the son moving back into the house in the first quarter of 2000. The couple later separated again, but the wife was still living in the house and had been since sometime in 1999. When asked if he had received $450 a month in rent from 1999 to the present date, the father stated that he had except for the period of time from January 2001 ^through August 2001 when the wife had lost her job and the son had changed jobs and was unable to make payments.
Finally, the father and State Farm attached another affidavit by the father to the motion for summary judgment. The affidavit stated in pertinent part that the son rented and lived in the property at issue from April 2000 through October 2001. During that time the son mowed and raked the yard, painted some rooms, replaced some vinyl flooring with tile in a bathroom, and performed some minor routine maintenance on the premises. However, at no time did the father consider him to be the “property manager,” nor did the father ever compensate him for being his “property manager.” The affidavit stated that the rent was never waived or reduced in exchange for work on the property, and that the father never intended for the son and his family to be protected by liability insurance under the State Farm rental dwelling policy.
On July 31, 2002, the motion for summary judgment was taken up, argued, and granted by the trial court. This appeal followed.
DISCUSSION
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment *137 shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and | fithat the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Although the burden of proof remains with the movant, if the movant will not bear the burden of proof at trial on the matter that is before the court on a motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but to point out the absence of factual support for one or more elements essential to the claim, action, or defense. If the adverse party then fails to produce factual support sufficient to show that he can satisfy his evidentiary burden of proof at trial, then there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
Appellate courts review summary judgment de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191; Hamdan v. State Farm Mutual Automobile Insurance Co., 36,883-CA (La.App.2d Cir.3/5/03), 839 So.2d 1017.
Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; Merlin B. Smith, Inc. v. Travelers Property Cas., 36,695 (La.App.2d Cir.2/27/02), 811 So.2d 1097.
17Pempsey asserts two errors on appeal. First, she argues that the trial court erred in finding no genuine issue of material fact as to whether Charles C. Clark was a real estate manager of the property under the provisions of the policy. In the alternative, Dempsey argues the trial court erred in finding no genuine issue of material fact as to whether allowing the son to live at the rental property and keep a dog at the property constituted constructive use of the house by the father, Charles S. Clark, so as to provide coverage under the policy.
An “insured” as defined by the State Farm rental dwelling policy includes “any person or organization while acting as real estate manager for the named insured.” Although the term “real estate manager” is not defined in the policy, the jurisprudence in this area indicates that a real estate manager “is simply one who manages real estate for another.” Savoy v. Action Products Company, Inc., 324 So.2d 921 (La.App. 3d Cir.1975), writ denied, 329 So.2d 463 (La.1976); Simmons v. State Farm Fire & Casualty Insurance Co., 607 So.2d 1080 (La.App. 3d Cir.1992).
The court in Savoy, supra, also made the following observations with respect to whether one acts as a lessee or a real estate manager:
While a real estate manager may also be a lessee, not all lessees are real estate managers. It is true that a lessee possesses for his lessor and not for himself. LSA-C.C. Article 3441; State, through Department of Highways v. Moity, 276 So.2d 770 (La.App. 3rd Cir.1973). It is likewise true that the lessee must act as a good administrator of his lessor’s property, LSA-C.C. Articles 2710 and 2719. And the Louisiana Civil Code provides that certain repairs must be made by the lessee, and that the lessee may call upon the lessor to make certain others. LSA-C.C. Articles 2693, 2694 and 2695. But though a person who performs these acts may be said to have *138 the ‘conduct or direction of a thing’, he does not as a result of that performance | ^become a real estate manager, for these acts are merely affirmative duties required of every lessee.
Dempsey asserts that the son maintained the property for the father, and that the type of maintenance performed, such as painting the house, baseboard work, and replacing the bathroom linoleum, advanced the interest of the father. Dempsey also relies on the case of Armand v. Rapides Bank and Trust Co., 98-1664 (La.App. 3d Cir.4/7/99), 732 So.2d 719, writ denied, 99-1318 (La.6/25/99), 746 So.2d 604, where, under the peculiar facts, the court found no manifest error in a trial court’s factual determination that a party was a real estate manager. Dempsey also argues that, at the very least, the court’s analysis in Armand, supra, creates an issue of fact that should not be resolved in a motion for summary judgment. Predictably, the defendants attempt to distinguish Armand, supra, on its facts, and assert that the facts of the instant case are more similar to those in Simmons, supra, and McDermott v. Smith, 364 So.2d 149 (La.App. 1st Cir.1978).
When analyzing this issue, framed within the context of the grant of summary judgment, we decline to place the weight of our conclusion either upon an assessment of the type of repair and maintenance work performed by the son at the residence, or the amount of “benefit” derived by the father from that work. If we were to undertake such an analysis, then suffice it to say that the facts of this case are much more in line with the Simmons and McDermott cases. See also Parr v. Head, 442 So.2d 1234 (La.App. 5th Cir. 1983). However, there is a more fundamental problem with Dempsey’s argument.
|sThe previously quoted policy provisions defining an insured to include a real estate manager do not simply apply to any person or organization who acts as a real estate manager for the named insured; the definition applies to any person or organization while acting as real estate manager for the named insured. In Bewig v. State Farm Fire & Casualty Insurance Co., 848 S.W.2d 521 (Mo.App. E.D.1993), a mail carrier brought an action against the insurer of a rental dwelling to recover for injuries sustained when he was bitten by a tenant’s dog. As in the instant case, the policy defined an insured to include any person or organization while acting as real estate manager for the named insured. The rental dwelling unit was owned by the tenant’s father who was the named insured under the policy, and the plaintiff, as in the instant case, contended that the daughter was a real estate manager of the property and therefore an insured. Although the court was not inclined to view the daughter as a real estate manager under the facts of that case, the court went on to observe that the record did not indicate the daughter was acting in the capacity of a real estate manager at the time of the occurrence which caused the plaintiffs injury. In this regard the court stated:
The insurance is intended to protect the landlord and those acting in his behalf in regard to the property. It obviously does not protect employees or agents in their individual capacities unrelated to the landlord’s interests. The record is totally silent on when the bite occurred, whether [the daughter] was home, or the circumstances of the bite. It is the plaintiffs burden to establish that coverage existed. That burden requires that plaintiff establish that [the daughter] was a real estate manager of the property, and that the injury occurred while she was acting in that capacity. The record is silent about [the *139 daughter’s] activities at the time of the occurrence.
| Accordingly, the court found no coverage for the plaintiffs injuries.
We agree with the court in Bewig, supra, that the unambiguous language of the policy, as well as logic based on the purpose of a rental dwelling policy, require that the plaintiffs injuries for which insurance coverage is sought must occur while the alleged insured was acting in the capacity of real estate manager for the named insured. The record herein shows that is not the ease. In fact, it would be difficult to conceive of circumstances in which the actions of the tenant’s family dog in biting a child could result in coverage. Because the facts surrounding the dog bite are not in dispute, and for the foregoing reasons, the policy language will not support a finding of coverage under those facts; therefore we must reject Dempsey’s “real estate manager” argument.
The alternative issue presented by Dempsey is whether a genuine issue of material fact exists as to whether the son’s use of the house constituted “constructive use” by the father. Dempsey points out that the son was not paying rent at the time of the incident, but was living at the residence with the permission of the father. Accordingly, she asserts that there is a material issue of fact as to whether or not the son was a renter, and whether the incident was covered under the “use of the insured premises” language in the previously quoted business liability coverage provisions of the policy.
Initially, we observe that, even though the language of insurance policies typically is construed in favor of a finding of coverage, Dempsey’s argument, that the rent-free use of a parent’s rental unit by a child is a “use” Inby the parent for purposes of business liability coverage, is very problematic. The policy at issue is a rental dwelling policy, thus indicating, even before the specific provisions are examined, that the policy is designed to protect the owner of rental property in connection with the rental of the property. Furthermore, the specific liability provisions at issue are found under the “Coverage L-Business Liability” policy language, thereby indicating that the “use of the insured premises” under that section is the owner’s use of the insured premises as rental property — a business use as opposed to personal use. Furthermore, we observe that in the exclusions portion of the policy language concerning liability coverage, business liability coverage does not apply to liability:
(2) Assumed under any unwritten contract or agreement, or by contract or agreement in connection with any business of the insured other than the rental of the insured premises.”
This exclusionary language also shows that coverage for business liability is focused solely on the business of the rental of the insured premises. Thus, if the father was simply allowing rent-free use by the son of property owned by the father, the logical conclusion is that this was a use “other than the rental of the insured premises,” and was not a business use of the property at all. Accordingly, such a personal use of the property would not seem to qualify for coverage protecting against business liability.
Nevertheless, accepting arguendo Dempsey’s assertion that there could be coverage under the business liability provisions of the policy if the son were not a “renter,” we still conclude that no genuine issue of material fact exists on the coverage issue. Unquestionably, the property at issue was housed as rental property by the son, the wife, and another renter prior to the period spanning January 1, 2001 *140 through October 2001. Thus, the real question is whether the fact that no rent was paid from January through October due to the son and his wife’s financial difficulties, and the fact that the father apparently had no intention of attempting to collect back-due rent for this period, require the conclusion that the son and his wife were not “renters” during that period. We find this argument untenable. It is hardly uncommon for rent not to be paid during times when a renter is having financial difficulties, and this is the case regardless of a familial relationship between the lessor and lessee. Similarly, regardless of any familial relationship, the lessor is free to begin the eviction process under such circumstances, to attempt to subsequently collect the back-due rent, or to simply forgive the indebtedness. However, in none of these instances is the relationship between the parties anything other than lessor and lessee. Nor does the lessor’s motivation in choosing among these options change the nature of the relationship.
This point is further illustrated by considering the situation in which a father leasing a residence to his son wants to evict the son for non-payment of rent. In such circumstances, the father could hardly avoid the necessity of following the strictly applied legal procedures for eviction by asserting that the son’s non-payment of rent and the father’s allowing him to continue to reside in the home for several months means that the son simply was not a lessee, and thus not entitled to the benefit of the notice requirements and other procedural protections provided by law for evictions.
There is no reasonable interpretation of the rental dwelling policy, in light of the undisputed facts of the incident at issue, which provides coverage in this instance. The trial court’s granting of the summary judgment motion was appropriate.
CONCLUSION
For the reasons set forth above, the judgment of the trial court is hereby affirmed at appellant’s costs.
AFFIRMED.