[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10304
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-03112-TWT

SHAWN MOON, TANYA MOON,

                                                                Plaintiffs-Counter
                                                                Defendants-
                                                                Appellants,

versus

CINCINNATI INSURANCE COMPANY,

                                                                Defendant-
                                                                Counter-Claimant-
                                                                Appellee,

KEMI GREEN,
GBOLAHAN BANKOLEMOH,

                                                                Counter
                                                                Defendants-
                                                                Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 27, 2015)

Before TJOFLAT and JORDAN*, Circuit Judges.

_____

*This decision is being entered by a quorum pursuant to 28 U.S.C. § 46(d).

PER CURIAM:

Shawn Moon and Tanya Moon brought this action again The Cincinnati Insurance Company ("Cincinnati") asserting both common law and contractual claims arising out of an insurance coverage dispute. Cincinnati asserted a counterclaim against the Moons. The district court granted summary judgment to Cincinnati on the Moons' claims against it. The Moons brought this appeal. Finding no error in the district court's conclusions, we shall affirm.

This action stems from the drowning death of a two-year-old child in a swimming pool at a home occupied by Shawn and Tanya Moon. At the time of the accident, Tanya Moon was babysitting the child.

The property was owned and insured by Shawn Moon's father, Terry Moon. In addition to Terry Moon, the insurance policy extended coverage to "[a]ny person . . . while acting as [Terry Moon's] real estate manager."

The decedent's parents and estate brought suit against Shawn and Tanya Moon and obtained a judgment in excess of ten million dollars. After initially defending Shawn and Tanya Moon under a signed reservation of rights, Cincinnati subsequently denied coverage and withdrew its defense of the Moons. The stated reason for the denial of coverage was that the policy did not cover Shawn and

Tanya Moon through their relationship with Terry Moon, the homeowner and policyholder.

The Moons subsequently brought this action in state court asserting breach of contract and both common law and statutory bad faith failure to settle claims. They also sought punitive damages and attorneys' fees. Cincinnati removed the action to the district court.

The parties filed cross motions for summary judgment. The Moons asserted that they were entitled to coverage under the terms of the policy that extended coverage to real estate managers of the property.

The district court granted Cincinnati's motion, holding that it had no duty to defend or indemnify the Moons in the wrongful death action against them as they were neither the insureds under the policy nor acting as real estate managers at the time of the accident. The court reserved ruling on the Moons' claim that Cincinnati voluntarily undertook duties to them while providing them with a preliminary defense and considering settlement proposals, but later denied these claims as well.

On appeal, the Moons assert that the district court erred in these holdings. The crux of their argument is that, since the term "real estate manager" is

undefined in the policy, it is ambiguous and its meaning must be strictly construed and resolved in favor of coverage. They assert that a "real estate manager" is "one who simply takes care of an owners' (sic) needs with regard to a piece of real estate." They argue that, because they took care of the home they leased from Shawn Moon's father, Terry, they were real estate managers as well as tenants. They cite no authority whatsoever for these arguments.

The district court held that the term real estate manager has an accepted meaning in the industry and is not ambiguous. The industry term "real estate manager" implicates real estate transactions rather than routine maintenance. *Sumitomo Marine & Fire Ins. Co. of America v. Southern Guar. Ins. Co.*, 337 F. Supp. 2d 1339, 1358 (N.D. Ga. 2004) (real estate managers are involved in selling or renting houses). *See also Insurance Co. of North America v. Hilton Hotel USA, Inc.*, 908 F. Supp. 809, 815 (D. Nev. 1995); *Dempsey Ex. Rel. Dempsey v. Clark*, 847 So. 2d 133, 137 (La. Ap. 2003); *McDermott v. Smith*, 367 So. 2d 149 (La. App. 1st Cir. 1978).

Furthermore, to extend the definition of real estate manager to include a tenant who performs routine maintenance on the home he is leasing would render meaningless the policy's stated lack of coverage for tenants of the property. Indeed, it would transform every tenant, family member or friend living in

4

another's home, who cuts the yard or paints a wall, into a covered real estate manager. This is not a reasonable interpretation of real estate manager. *See Gulf Ins. Co. v. Mathis,* 183 Ga. App. 323, 324 (1987) (construction of insurance contract term must conform to what a reasonable insured would understand it to mean). No reasonable insured would equate his tenants with real estate managers.[1]

Finally, the district court noted that the deposition testimony of the actual insured, Terry Moon, clearly revealed that he did not consider his son and daughter-in-law to be real estate managers of his property. He was allowing them to live there to help them out (he purchased the home from them to avoid foreclosure).

The court subsequently held that, because the Moons were neither the insureds nor real estate managers, all of their other claims – which depended upon their being covered by the policy – were due to be denied.

We agree with the district court. As mere tenants of the property, the Moons were not covered by Terry Moon's policy of insurance with Cincinnati. There being no error in the judgment below, we AFFIRM.

---

[1] Furthermore, to be covered, a real estate manager must be acting as a real estate manager at the time of the event for which coverage is sought. At the time of this accident, Tanya Moon was babysitting and Shawn Moon was not at home. There were no allegations in the complaint that the Moons were acting as real estate managers at the time of the accident.

5