415 So.2d 1347 (1982)
FIREMAN'S FUND INSURANCE COMPANY, Appellant,
v.
Harry J. VORDERMEIER, Jr., and Vordermeier Company, Appellees.
FIREMAN'S FUND INSURANCE COMPANY, Appellant,
v.
Adam MOLOT, and Harry J. Vordermeier, Jr., et al., Appellees.
Nos. 81-763, 81-1503.
District Court of Appeal of Florida, Fourth District.
June 23, 1982.
Rehearing Denied July 23, 1982.
*1348 Gerald E. Rosser of Corlett, Merritt, Killian & Sikes, P.A., Miami, for appellant.
Scott D. Sheftall and Robert L. Floyd of Floyd, Pearson, Stewart, Richman, Greer & Weil, P.A., Miami, for appellees Molot.
Ray Ferrero and Timothy P. Beavers of Ferrero, Middlebrooks & Strickland, P.A., Miami, for appellees Vordermeier.
ANSTEAD, Judge.
These consolidated cases present two issues for resolution. We must review the trial court's determination that an insurance policy clause covering "any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured" should be interpreted to provide coverage for a receiver appointed by the court to manage the property at the request of the named insureds. We must also review a post-judgment order awarding the receiver and his agent company $75,000 in attorney's fees and $9,575.19 in costs.
On April 8, 1975, Adam Molot, age four, fell from the fifth floor of the Golden Isles Professional Building in Hallandale and suffered substantial permanent injuries. At the time of the accident, a three-year insurance policy issued on May 31, 1972 by the appellant, Fireman's Fund Insurance Company, was in force. The relevant named insureds under the policy were S. Lee Crouch, Trustee for S. Lee Crouch, Dr. and Mrs. Bret Lusskin, and Sage Construction a/k/a Golden Isles Professional Building.
When the policy was issued, the Lusskins owned the land on which the building was constructed and were lessors of a 99-year leasehold interest to S. Lee Crouch d/b/a Golden Isles Professional Building as lessee. Sage Construction initially managed the building. On August 23, 1974, the Lusskins received a mortgage on the leasehold interest of the remaining named insureds in the building. The Lusskins then assigned this mortgage to the First National Bank of Hollywood. Subsequently, financial disagreements arose among the parties, and on March 7, 1975, First National, as assignee of the Lusskins, filed a foreclosure action against the remaining named insureds to foreclose the mortgage. On March 20 the trial court, pursuant to paragraph 11 of the parties' 1974 agreement that "[u]pon default by the Mortgagor, the Mortgagee shall have the right to have a receiver appointed," issued an order designating Harry Vordermeier as receiver. At that point Vordermeier assumed responsibility for management of the property and he in turn engaged the Vordermeier Company to manage the building as his agent.[1] On the day Adam Molot was injured management of the building was Vordermeier's responsibility.
Molot and his parents brought suit against Vordermeier, the Vordermeier *1349 Company, S. Lee Crouch d/b/a Golden Isles Professional Building, S. Lee Crouch, Dr. and Mrs. Lusskin, Sage Construction, and others, alleging that their negligence was the proximate cause of Molot's injuries. Fireman's Fund agreed to cover and defend the named insureds, but refused to cover or defend Vordermeier and the Vordermeier Company on the grounds that a court-appointed receiver could not be considered "a real estate manager for the named insured" such that he and his agent would be covered under the clause of the policy defining the persons insured. In response, Vordermeier and the Vordermeier Company filed a cross-claim against Fireman's Fund to establish coverage.
On December 31, 1980, Vordermeier and the Vordermeier Company entered into a settlement agreement with the Molots.[2] Vordermeier agreed to the entry of a $1,200,000 judgment against him, while the Molots agreed to seek execution of the judgment only against Fireman's Fund. Vordermeier Company agreed to the entry of the same $1,200,000 judgment against itself, with the Molots agreeing to first seek execution against Fireman's Fund. On February 3, 1981, the settlement agreement was approved by the trial court and a final judgment was entered accordingly. Vordermeier and the Vordermeier Company, then moved for a summary judgment on the insurance coverage issue against Fireman's Fund, which was granted on April 16, 1981 in an order which provided in part:
Section II(d) of the policy obligated FIREMAN'S FUND INSURANCE COMPANY to provide insurance coverage for plaintiffs' claims to:
II. PERSONS INSURED
* * * * * *
(d) Any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured.
FIREMAN'S FUND INSURANCE COMPANY denied the requests of the VORDERMEIERS for coverage pursuant to the above definition of "Persons Insured". The VORDERMEIERS, as well as FIREMAN'S FUND INSURANCE COMPANY, filed opposing crossclaims, respectively, on this insurance coverage issue.
The Court specifically finds as a matter of law that the above language of the insurance policy is clear, certain and unambiguous, and that the VORDERMEIERS are "Persons Insured" under this definition. They are a "person" and "organization", respectively, who were "acting as real estate managers for the named insured" at the time of the subject accident.
HARRY J. VORDERMEIER, JR. was managing the Golden Isles Professional Building, having been appointed as a Receiver by the Broward Circuit Court before the date of the accident. HARRY J. VORDERMEIER, JR. had employed VORDERMEIER COMPANY to assist him in the day-to-day duties of managing the Golden Isles Professional Building. The record is uncontroverted that the VORDERMEIERS were acting as real estate managers. There is no competent admissible evidence, or inferences therefrom, to create a question of fact whether the VORDERMEIERS were acting as real estate managers. FIREMAN'S FUND's mere denial of that fact is not sufficient to preclude summary judgment.
To avoid an obligation to provide coverage in this case, FIREMAN'S FUND has advanced several arguments that the VORDERMEIERS were not acting "for the named insureds". The Court has considered all arguments presented by FIREMAN'S FUND to sustain this theory and finds them to be totally without merit. FIREMAN'S FUND, by these arguments, is simply trying to add to or change the clear, certain and unambiguous language in the subject policy.
When a receiver takes over management of real property during the pendency of legal proceedings, the ownership of *1350 the property remains with the title owners. There can be no question that a court appointed receiver as a matter of law manages property as the representative of the court for all interested parties, including the owners and named insureds. 42 Am.Jur.2d § 901 Insurance and cases cited therein; see also, Chiesur v. Superior Court, [76 Cal. App.2d 198] 172 P.2d 763 (Cal. App. 1946).
The mere fact that a receiver may manage the real property for creditors or other interested parties in addition to the named insureds is not sufficient to defeat coverage. The above language in FIREMAN'S FUND's form policy does not restrict coverage to those acting as a real estate managers (sic) exclusively for the named insured.
In summary, the Court finds that there is no genuine issue of material fact that HARRY J. VORDERMEIER, JR. and VORDERMEIER COMPANY were acting as real estate managers, and that pursuant to the clear, certain and unambiguous terms of the FIREMAN'S FUND policy, they were acting as real estate managers for the named insureds.
Vordermeier and the Vordermeier Company also sought attorney's fees and costs against Fireman's Fund. The trial court received expert testimony on this issue which fixed the reasonable value of the legal services received by Vordermeier and the Vordermeier Company at anywhere from $35,000 to $225,000. The court then entered an order assessing $75,000 in attorney's fees and $9,575.19 in costs.
We believe that the trial court's finding of coverage was correct. An insurance company, as drafter of the policy, has the obligation of spelling out in clear, unambiguous language exactly who is covered by the policy and who is to be excluded. Any ambiguity in the language of the policy will be construed against the company. This is especially true when the insurance company seeks to limit the coverage provided in the policy contrary to the plain meaning of the provisions defining persons insured. In such instances coverage will be denied only if the language of the policy appears to unambiguously limit coverage. See Rigel v. National Casualty Co., 76 So.2d 285 (Fla. 1954); Nixon v. United States Fidelity & Guaranty Co., 290 So.2d 26 (Fla. 1973); and United States Fire Ins. Co. v. Morejon, 338 So.2d 223 (Fla. 3d DCA 1976); cert. denied 345 So.2d 426 (Fla. 1977). The policy at issue here does not appear to have been clearly intended to deny coverage to a court-appointed receiver who carried out the duties of real estate manager.[3]
In addition, we believe public policy considerations favor, in the absence of explicit language in the policy to the contrary, the extension of insurance coverage to court-appointed receivers who undertake responsibilities identical to those which were previously handled by private individuals or organizations clearly covered under a policy of public liability insurance. Public policy requires, where possible, the uninterrupted continuation of public liability insurance for ongoing business ventures, regardless of the fact that business may be carried on by a receiver. To hold otherwise would result in increased uncertainty as to continuing financial responsibility to the public dealing with the business and might discourage responsible individuals from assuming the duties of receivership. Fireman's Fund has also failed to demonstrate that any substantial additional risks were created when management of the premises was undertaken by the receiver.
We also find that the court's order assessing attorney's fees should be affirmed. *1351 Since there was expert testimony before the lower court fixing the reasonable value of the legal services received by Vordermeier and the Vordermeier Company at anywhere from $35,000 to $225,000, we cannot conclude that the lower court's award of $75,000 in attorney's fees was in error. See Maine Ins. Co. v. Raser, 240 So.2d 163 (Fla. 3d DCA 1970). The lack of any direct contractual relationship between Vordermeier, the Vordermeier Company, and Fireman's Fund does not present any bar to the statutory award of attorney's fees. Cf. Prygrocki v. Industrial Fire & Casualty Ins. Co., 407 So.2d 345 (Fla. 4th DCA 1981). There is, however, a problem with the costs award of $9,575.19. Vordermeier and the Vordermeier Company sought a total costs award of only $9,633.16. $3,487.00 of this amount was for the services of Andrew Geller, an accountant. However, the record contains no evidence upon which any calculation of the value of Geller's services could be based. For this reason the costs awarded for Geller's services must be deleted.
Accordingly, we affirm the judgment of the trial court, except for correction of the costs levied for which purpose we remand this cause to the trial court.
DOWNEY and GLICKSTEIN, JJ., concur.
NOTES
[1] The record reflects that Vordermeier informed Fireman's Fund of his appointment and of his desire to renew the policy on the building, which was due to expire shortly. However, it also appears that Vordermeier was under the impression that Travelers Insurance Company had issued a policy on the building.
[2] There is no dispute here about the propriety of the settlement.
[3] Fireman's Fund claims that not even "the most cautious underwriter" would have felt the need to have appended the clause in question with the phrase "this provision does not cover or include [a] court appointed receiver." We do not see anything unreasonable in expecting an insurance company to take such a precaution. It would appear to be reasonably foreseeable that a certain percentage of jointly-operated business ventures will eventually fall into receivership. In addition, the appointment of a receiver to manage the property was clearly contemplated by the named insureds, since provision for the receiver was made in the agreement executed by the named insureds.