PARSONS DRILLING, INC., a Nevada Corporation and NORMAN A. PARSONS and NELDA H. PARSONS, Appellants, v. POLAR RESOURCES COMPANY, a Nevada Corporation, and C. WARREN HUNT and MALCOLM I. HUNT, Respondents.

No. 12864

August 27, 1982

649 P.2d 1360

*George G. Holden,* Battle Mountain, for Appellants.

*Goicoechea, DiGrazia & Marvel,* Elko, for Respondents.

## OPINION

*Per Curiam:*

Appellant, Parsons Drilling, Inc., challenges the trial court's ruling that Parsons remit respondent Polar Resources Company's downpayment made pursuant to a contract between the two parties.

On approximately May 25, 1979, both parties entered into a contract of sale for appellants' drilling rig. Parsons had purchased the rig through Credit Alliance Corporation under a conditional sales contract.

In accordance with the terms of the parties' contract, Polar gave Parsons a thirteen thousand dollar deposit in exchange for possessory rights in the rig. The contract specified that both parties would try to elicit Credit Alliance Corporation's approval of the conditional sales contract's assignment to Polar. If the assignment was accepted within forty-five days, Polar would then take over payments under the conditional sales contract and reimburse Parsons for past payments. Should such assignment not be approved within the time period set, the contract terms gave Polar the option of either paying an extra forty thousand dollars and buying the rig or, upon Parsons' remittance of the thirteen thousand dollar deposit, returning the rig in no worse condition than when received by Polar.

Credit Alliance Corporation did not approve the assignment within forty-five days. More than forty-five days after contracting, Polar's president personally delivered a letter to Parsons terminating the parties' contract. Attached to the letter was a proposed settlement regarding return of the downpayment less an amount representing Polar's use of a compressor owned by Parsons. Parsons rejected the proposed settlement and refused to return the downpayment or accept return of the rig.

Parsons filed suit on October 5, 1979. In its complaint, Parsons asked for return of the rig. It also requested the cost of repair to the rig, three months rental of the rig and the value of services rendered by Parsons' employees to Polar. Parsons, further, wanted return of, or payment equal to the value of, several accessories to the rig. Finally, Parsons sued for recovery equal to the value of Polar's use of a compressor owned by Parsons.

The district court ruled in favor of Polar. It ruled that Polar had the right to terminate the contract and recover the thirteen thousand dollar downpayment, less several ancillary charges due Parsons by Polar. The district court, further, found that Parsons' refusal to return the downpayment and refusal to accept return of the rig made its demand for recovery of alleged losses relating to the rig's use nugatory. It also held that the contract's silence as to Polar's paying rent for use of the rig during the forty-five day period over which the condition was in effect rendered Parsons' demand for such rent baseless. Parsons now challenges the district court's judgment.

Parsons initially takes issue with the lower court's ruling that return of the downpayment was necessary before Polar's relinquishment of the rig. Parsons contends that return of the rig in as good condition as delivered was a condition precedent to Parsons' remittance of the downpayment. The relevant contract terms provide as follows:

> If, however, the said assignment is not approved within 45 days hereof, then Polar may elect either to pay Parsons a further $40,000; or on payment by Parsons to Polar of $13,000 as reimbursement of the downpayment hereinbefore provided . . . Polar shall forthwith deliver back to Parsons the [drilling rig and equipment] and in the event of such return to Parsons, the returned items shall be in no worse condition than when Polar received them. . . .

As early as 1868 this court stated that "[l]anguage, although not a perfect medium of thought or intention, is yet the most perfect which we possess. . . . If there be no ambiguity apparent, the words must be taken in their usual and ordinary signification, and the context interpreted in accordance with grammatical rules." Rankin v. New England M. Co., 4 Nev. 78, 83 (1868). One is hardpressed to glean Parsons' interpretation of the contract from the terms themselves. The lower court's interpretation of the contract clearly flows from the language of the contract. Thus, we conclude that Parsons' assertion is meritless.

The lower court found that Polar did not owe Parsons rent for Polar's use of the rig. Parsons contends that it was entitled to such rent, and the lower court's finding was erroneous. Entitlement to the rent, according to Parsons, is based in Polar's purported recision of the contract and the equitable tenets associated with recision. (*See* Mortensen v. Berzell Investment Company, 429 P.2d 945 (Az. 1967).)

Parsons mistakes Polar's actions, terminating the contract, for a recision. Polar was given the option, in the contract, of returning the rig and terminating the contract. Exercise of its contractual right was not a recision of the contract. Thus, Parsons cannot rely on the equitable principles of recision in asking for rent of the rig.

In the present case the contract was silent as to Polar's liability for rental payments in the event of contract termination. "When parties reduce their contract to writing . . . the instrument must be treated as containing the whole contract, and parol proof is not admissible to alter its terms." Gage v. Phillips, 21 Nev. 150, 153 (1891). The terms of the contract did not provide that Polar would be liable for rent. Parsons cannot now alter those terms to include a provision for payment of rent. Thus, we conclude that the lower court correctly found Polar not liable to Parsons for rent.

Parsons takes issue with several of the trial judge's findings as to alleged damages incurred by it. Among other rulings, the trial court held that the cost of repairs to the rig was $323.39. The court also permitted recovery for Polar's use of Parsons' compressor for two months. The trial court, further, allowed recovery for a missing down-hole hammer and denied relief for other accessories allegedly missing. Parsons argues that these findings were in error.

This court's inquiry into Parsons' allegations "is limited to [determining] whether there is evidence in the record to support the finding of the trial court." Jensen v. Brooks, 88 Nev. 651, 653, 503 P.2d 1224 (1972). In calculating the amount of damages, a trial judge is "clothed with a wide discretion. In the absence of a showing of an abuse of such discretion its determination will not be disturbed on review." Bigler v. Richards, 377 P.2d 552, 553 (Colo. 1963). The lower court's findings as to damages are supported by the record before us and do not evince an abuse of discretion.

As previously noted, Polar was given the option of buying or returning the rig should Parsons' debt not be assigned within forty-five days of the contract date. Parsons contends that consideration for the option did not exist. Thus, according to Parsons, the contract was illusory.

Parsons' allegation distills to a conclusion that consideration for the condition in the contract is independent of consideration for the option. Consideration for the option, however, emanates from the condition in the contract. Had the assignment occurred within forty-five days, Polar would be required, under the contract, to purchase the rig. Polar's binding itself to such a restriction constitutes the detriment necessary to establish consideration for the option. (*See* Grant v. White, 439 P.2d 828 (Az. 1968).) We conclude that Parsons' contention is baseless.

We had considered several other assertions proffered by Parsons and find them without merit.

Accordingly, we affirm the lower court's judgment.