655 So.2d 1259 (1995)
INFINITY YACHTS, INC., Marina 84, Inc., and Nautical Engineers, Inc., Appellants,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Institute of London Underwriters, Sedgwick James of Florida, Inc., Appellees.
No. 94-0210.
District Court of Appeal of Florida, Fourth District.
May 31, 1995.
*1260 Kenneth R. Drake and Pete L. DeMahy, Touby, Smith, DeMahy & Drake, P.A., Miami, for appellants.
George O. Mitchell, Mitchell, McAlpin & Associates, Miami, and Alexander N. Breckinridge, IV, O'Neil, Eichin, Miller, Breckinridge & Saporito, New Orleans, LA, for appellees.
STONE, Judge.
We reverse a summary judgment entered in favor of the insurance company, St. Paul, and direct that the court on remand enter summary judgment in favor of Infinity, the insured.[1] The matter was submitted by both the insured and the insurer to the trial court for resolution on cross-motions for summary judgment.[2] Infinity builds and sells yachts. It purchased a builder's risk policy from St. Paul. The dispute involves the amount of insurance coverage on one of the vessels, damaged when it ran aground during sea trials.
Under the policy, it was anticipated that numerous insured vessels would be in various stages of construction or disposition during the period of coverage. The insured was to report quarterly which of the vessels went on and off coverage during the preceding quarter. The premium would be backcharged according to the cumulative contract prices (the prices charged by the insured to the buyers of the vessels). With respect to any new construction commenced during a quarter, the insured was not expected to report until the end of that policy quarter. Under the policy, if a loss were to occur to a vessel on which construction started between reporting periods  so that its contract price would not appear on any report until after the loss  the vessel would still be covered and would be adjusted at the actual value of the loss.
The insurer contends that, at the time the policy was purchased, the insured designated a contract price for the subsequently damaged vessel in question well below the amount now claimed. It is undisputed that at some point during the insured's search for a carrier, it did furnish a "list" of contract prices, of vessels that were then under construction, to an insurance agent, Sedgwick James, prior to the agent's seeking quotations from several insurance companies, including *1261 St. Paul. The figures itemized in that list in fact reflected only the insured's equity exposure, the balances then owed by the purchasers, rather than the full contract prices for vessels under construction.
The insured claims that the list was given to St. Paul only incident to a totally separate application for a liability policy, which St. Paul declined to offer, and that it was not submitted to St. Paul as part of an application for a builder's risk policy. We note that St. Paul does not allege that there was any misrepresentation by the insured. The insurance company never obtained or even sought a written application for the builder's risk policy. The insured was never warned that the insurer considered the values used in the list as maximum limits on any future claim for losses on the individual vessels described in that list under any subsequently issued builder's risk policy.
The form of insurance policy utilized in this instance by St. Paul was apparently not designed to insure multiple vessels. Nevertheless, various blanks were completed indicating that multiple vessels were covered and providing for quarterly reporting as to the covered vessels. The initial premium payment was treated as a deposit, based on an estimate of what the premium was likely to be. The amount insured was "$ As attached," with an asterisk indicating the following additional information: "Charge at a monthly rate against completed value or contract price, to be reported quarterly." The total premium for the year could not be known until the final report. The "agreed value" paragraph provided "$ to be reported." (emphasis added) However, the maximum amount of insurance coverage was specified, as $1,500,000 per vessel and $2,000,000 per occurrence.
Although St. Paul asserts that the erroneous[3] list must be construed as an initial "report" under the policy, it is clear that the list was not referred to in the policy in any manner, nor was it attached to the policy, nor were there any terms describing a method of reporting that could be construed as incorporating such a preliminary paper. No policy provisions described or required an initial or inception report, or provided that values initially provided for purposes of obtaining a quote constituted the agreed values as to vessels under construction at the time coverage began. On the face of the policy, the plain meaning of the term "to be reported" is that the reporting requirement is a future one. "[T]o be reported" cannot be construed to read "as previously reported."
On its face, the policy is not ambiguous. By its terms, it provides coverage for the contract price of the vessel limited to $1,500,000, and therefore must be so interpreted. An insurance policy is to be interpreted to provide coverage whenever possible. Sanz v. Reserve Ins. Co. of Chicago, Ill., 172 So.2d 912, 913 (Fla. 3d DCA 1965). See also National Chiropractic Ins. Co. v. Parsons, 341 So.2d 220 (Fla. 3d DCA 1976) (rejecting insurance company's argument that letter purporting to exclude one chiropractor, accompanying chiropractic association's insurance policy, could change express provisions of policy, covering any person for whose acts association was legally responsible; noting meaning of unambiguous contract should be limited to expressed provisions).
Though the policy form was written so that a provisional value could be inserted for a single vessel to be covered,[4] no provisional value (or list of provisional values) was made a part of the policy; instead, the agreed value was "to be reported," and the reporting was to be done quarterly. The first quarterly report  furnished after the fact  accurately established this vessel's actual contract price, and therefore the agreed value of the vessel for coverage purposes under the policy terms.
In any event, to the extent "to be reported" might be seen as ambiguous, the ambiguity should be resolved in favor of the insured. See Fireman's Fund Ins. Co. v. Vordermeier, 415 So.2d 1347 (Fla. 4th DCA), *1262 pet. for rev. dismissed, 421 So.2d 67 (Fla. 1982); Airmanship, Inc. v. U.S. Aviation Underwriters, Inc., 559 So.2d 89 (Fla. 3d DCA), rev. denied, 576 So.2d 294 (Fla. 1990); Zautner v. Liberty Mut. Ins. Co., 382 So.2d 106 (Fla. 3d DCA 1980).
We have considered, but deem inapposite, Six L's Packing Co. v. Florida Farm Bureau Mutual Insurance Co., 268 So.2d 560 (Fla. 4th DCA 1972), aff'd, 276 So.2d 37 (Fla. 1973), and American Motorists Insurance Co. v. Farrey's Wholesale Hardware Co., 507 So.2d 642 (Fla. 3d DCA), rev. denied, 518 So.2d 1274 (Fla. 1987). In Six L's, the policy, covering the contents of the insured's tomato packing shed, expressly provided that when the insured was late in filing its monthly reports of the cash value of the contents, which the policy stated were due 30 days after the first day of each calendar month, coverage for any loss would be limited by the amount of value shown in the last report filed before the loss. Thus this court affirmed summary judgment in favor of the insurer, where the insured was several months late in filing its reports at the time of the loss and the last report filed reported the contents of the shed to be none. Likewise, in the Farrey's Wholesale Hardware Co. case, where the policy contained a much more specific value reporting requirement, the court found that the trial court should have directed a verdict for the insurer on the issue of value under the policy terms rather than allowing a greater sum based on the insured's late-filed inventory. Such restrictions cannot be placed upon the insured in this case, as its policy did not contain any such provisions. Such meaning cannot be imputed to the policy simply by the words "to be reported."
St. Paul could have written the policy more clearly. The policy can be read, without the list, to provide coverage for the initial quarter based on the values that are "to be reported" quarterly, at whatever values Infinity Yachts would show on its first quarterly report, at the end of the first quarter. There was a maximum liability and an initial deposit. If St. Paul wished to provide for an initial agreed value as to all vessels in the construction pipeline at the time of the effective date, it easily could have attached a list of such initial values to the policy or even simply referred to the list in question by reference as providing an agreed value for those vessels at the inception of the policy; however, it did not do so. St. Paul bears responsibility for the wording it selected and used.
PARIENTE, J. and BROWN, LUCY, Associate Judge, concur.
NOTES
[1] We refer to Appellants in the singular as they are related entities which collectively are the insured.
[2] Each party asserts that there are no issues of fact, although each interprets some of the facts differently. Nevertheless, neither seeks an evidentiary hearing. Neither party contends that there are issues of fact precluding summary judgment for the other.
[3] "Erroneous" because it contained the balance owed and not the full contract prices of the vessels in production at a point in time prior to the policy.
[4] Assuming it was a mistake to select a policy form for insuring a single vessel, it is unlikely that the particular policy language used here will be found in similar policies.