INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation, Plaintiff,

v.

HILTON HOTELS U.S.A., INC., a Delaware corporation; Hilton Hotels Corporation, a Delaware corporation; Hilton Nevada Corporation, a Nevada corporation; and Las Vegas Hilton Corporation, a Nevada corporation, Defendants.

HILTON HOTELS CORPORATION, a Delaware corporation, and Las Vegas Hilton Corporation, a Nevada corporation, Counter–Claimants,

v.

INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation, Counter–Defendant.

HILTON HOTELS CORPORATION, a Delaware corporation, and Las Vegas Hilton Corporation, a Nevada corporation, Third Party Plaintiffs,

v.

The TAILHOOK ASSOCIATION, a California non-profit corporation, Third Party Defendant.

No. CV–S–94–814–PMP (LRL).

United States District Court, D. Nevada.

Nov. 20, 1995.

Paul F. Eisinger, Carrie McCrea Hanlon, Thorndal, Backus, Armstrong & Balkenbush, Las Vegas, NV, Peter J. Mooner, Paul E. Escobar, White and Williams, Philadelphia, PA, for plaintiff.

Scott M. Mahoney, Las Vegas, NV, Gail S. Cooper–Folb, Knapp, Petersen & Clarke, Glendale, CA, for defendants Hilton.

## ORDER

PRO, District Judge.

Before the Court is the Motion for Summary Judgment of Plaintiff Insurance Company of North America (# 26), filed June 26, 1995. Defendants Hilton Hotels U.S.A., Inc., Hilton Hotels Corporation, Hilton Nevada corporation, and Las Vegas Hilton Corporation (collectively, "Hilton") filed their Opposition to Plaintiff Insurance Company of North America's Motion for Summary Judgment (# 34) on July 12, 1995. Defendants also filed a Concise Statement of Facts not Genuinely in Issue in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment (# 35), a Request for Judicial Notice in Support of Defendant's Opposition to Plaintiff Insurance Company of North America's Motion for Summary Judgment (# 36),

and a Declaration of Gail S. Cooper–Folb in Support of Defendants' Opposition to Plaintiff Insurance Company of North America's Motion for Summary Judgment and in Support of Defendants' and Counterclaimants' Motion for Partial Summary Judgment (# 37), on July 12, 1995. Plaintiff Insurance Company of North America ("INA") filed its Reply (# 40) on August 3, 1995.

Also before the Court is the Defendants' Motion for Partial Summary Judgment (# 31), filed July 12, 1995. Defendants and Counter–Claimants Hilton Hotels also filed a Concise Statement of Facts Not Genuinely in Issue in Support of Defendant's and Counter–Claimants' Motion for Partial Summary Judgment (# 32), as well as a Request for Judicial Notice in Support of Defendant's Motion for Partial Summary Judgment (# 33) on July 12, 1995. Plaintiff INA filed its Opposition to Defendants' Motion for Partial Summary Judgment (# 43) on August 3, 1995. Plaintiff INA filed a document styled "Response to Defendants' 'Concise Statement of Facts Not Genuinely in Issue in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment'" (# 42) on August 3, 1995. The Defendants then filed a document styled "Reply to Plaintiff Insurance Company of North America's Response to Hilton's Concise Statement" (# 46) on August 25, 1995. Finally, Defendants filed their Reply to Plaintiff Insurance Company of North America's Opposition to Hilton's Motion for Partial Summary Judgment (# 45) on August 25, 1995.

The Court held a hearing regarding the above Motions on November 14, 1995.

## I. Background

This case arises from the Tailhook conventions held for Naval Aviators at the Las Vegas Hilton Hotel in Las Vegas, Nevada in September 1990 and September 1991. Twelve actions were filed in Nevada federal and state court against the Hilton Defendants and the Tailhook Association arising from claims that sexual assaults occurred against women during those conventions. Each of the claimants alleged that some or all of the Hilton Defendants were liable for failing to exercise due care in providing reasonable precautions and/or adequate security to prevent the occurrence of the alleged assaults.

INA issued a policy of liability insurance, No. GSVP18747285 (the "Tailhook Policy") to the Tailhook Association, covering the period from May 6, 1990 through May 6, 1992. That policy defines an "insured" as follows:

> Any person (other than your employee), or any organization while acting as your real estate manager.

Hilton claims that it qualifies as an "insured" under this provision and claims that INA at a minimum has a duty to defend Hilton in the underlying actions arising from the 1990 and 1991 Tailhook conventions. INA claims that Hilton does not qualify as an insured under the above provision, and seeks a declaratory judgment to that effect. Accordingly, the cross-motions for summary judgment are now properly before the Court.

## II. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

▇▇▇ The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact.[1] *See Adickes v. S.H. Kress & Co.*, 398

---

1. Hilton asserts that INA's Motion for Summary Judgment (# 26) fails procedurally because INA failed to submit a "separate" statement of material facts not in dispute pursuant to LR 140–7. Notwithstanding the fact that Hilton misstates the rule, INA did set forth a "Statement of Facts" within its Motion (# 26).

Hilton further asserts that INA's Motion fails procedurally because INA did not provide certified copies of "pleadings" filed as exhibits and did not request the Court take judicial notice of such "pleadings." However, Rule 56(e), upon which Hilton relies, does not require sworn or certified copies unless the papers are referred to in an affidavit, *see* Fed.R.Civ.P. 56(e), and the

U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 883 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

■ If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First Nat. Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), *reh'g denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Commodity Futures Trading Commission v. Savage,* 611 F.2d 270 (9th Cir.1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submit-

ted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979), *reh'g denied,* 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

■ A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

■ All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of ev-

Court may take judicial notice "whether requested or not." Fed.R.Evid. 201(c). The Court will take judicial notice of the copies of the pleadings, motions, and discovery responses in this action and the underlying action. The Court will also take judicial notice of those items outlined by Hilton in its Requests for Judicial Notice (## 33 and 36).

Hilton finally asserts that the Convention Agreement is not properly authenticated and therefore inadmissible. Indeed, INA did not meet the requirements of Fed.R.Evid. 901 with regard to the Convention Agreement. However, INA still met its burden for its Motion for Summary Judgment (# 26). *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The Court is perplexed as to Hilton's assertion of the inadmissibility of the Convention Agreement when Hilton relies both on the Convention Agreement and on an unauthenticated copy of a document purporting to be Exhibit A to the Convention Agreement in its Opposition (# 34). Neither is authenticated by Hilton and both are inadmissible. However, because Hilton relied on the Convention Agreement in its Opposition (# 34), that document's authenticity is supported by sufficient circumstantial evidence. *See, e.g., Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1423 (10th Cir.1991).

ery action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## III. Choice of Law

■ Because the Court has diversity jurisdiction over this matter, the Court must apply the choice of law principles of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022, 1025 (9th Cir.1983), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983); *see Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ Nevada follows the "substantial relationship" or "most significant relationship" test of the Restatement (Second) Conflict of Laws to resolve choice of law questions when an actual conflict exists between the application of the forum state's law and the application of another state's law. *See Williams v. United Services Auto. Ass'n,* 109 Nev. 333, 849 P.2d 265, 266–67 (1993); *Sotirakis v. United Service Auto. Ass'n,* 106 Nev. 123, 787 P.2d 788, 789–90 (1990); Restatement (Second) Conflict of Laws, § 188 (1971). Hilton asserts that the laws of California and Nevada are similar, and Hilton points to no actual conflict between the two laws. Accordingly, the Court will apply Nevada law. *See Candelaria Industries, Inc. v. Occidental Petroleum Corp.,* 662 F.Supp. 1002, 1004 (D.Nev.1984). Where the Nevada Supreme Court has not addressed an issue, the Court will use its own best judgment to predict how the state court would decide the substantive

issue. *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986), *reh'g denied, modified,* 810 F.2d 1517 (9th Cir.1987); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). In performing that function, the Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Takahashi,* 625 F.2d at 316.

## IV. Real Estate Manager

■ The sole issue before the Court is not, as Hilton suggests, whether the duty to defend was triggered.[2] The fundamental issue before the Court is whether Hilton qualifies as an insured under the Tailhook Policy.

■ Hilton contends that the phrase "real estate manager" is ambiguous. If a contract provision is reasonably susceptible to more than one construction or interpretation, it is ambiguous. *Margrave v. Dermody Properties, Inc.,* 110 Nev. 824, 878 P.2d 291, 293 (1994). The existence of an ambiguity is a question of law for the Court. *Id.*

■ If no ambiguity exists, the words of the document must be taken in their usual and ordinary meaning. *Dickenson v. Nevada,* 110 Nev. 934, 877 P.2d 1059, 1061 (1994) (citing *Parsons Drilling, Inc. v. Polar Resources,* 98 Nev. 374, 649 P.2d 1360, 1362 (1982)); *see also Ellison v. California State Auto. Ass'n,* 106 Nev. 601, 797 P.2d 975, 977 (1990) ("contracts will be construed from the written language and enforced as written") (citing *Southern Trust Mort. Co. v. K & B Door Co.,* 104 Nev. 564, 763 P.2d 353, 355 (1988)). Indeed, the Court should not create a new contract by rewriting the unambiguous terms of the agreement. *Candelaria Indus-*

2. The "duty to defend" rule provides that an insurer must defend any suit brought against its insured that potentially seeks damages within the coverage of the policy. *Rockwood Ins. Co. v. Federated Capital Corp.,* 694 F.Supp. 772, 776 (D.Nev.1988). If facts are alleged which, if proven, would give rise to the duty to indemnify, then the insurer must defend. *Id.*

However, when a defendant is not an insured under the policy, it is not entitled to a defense. 7C John C. Appleman, Insurance Law and Practice (Berdal ed.), § 4685 (1979 & Supp.1994); *Evan v. Employers Mutual Liability Ins. Co. of Wisconsin,* 391 F.Supp. 1230, 1232 (D.Alaska

1975) (insurance company had no duty to provide defense to persons who were not even arguably insureds); *Bituminous Cas. Corp. v. North River Ins. Co.,* 46 Ill.App.3d 654, 5 Ill.Dec. 60, 63, 361 N.E.2d 60, 63 (1977) (insurer not obligated to defend insured's employee who drove tractor at time of accident since employee was not using company vehicle and was therefore not within class of persons insured); *see also Rockwood,* 694 F.Supp. at 776 (when insurance policy properly construed precludes a duty to indemnify there is no duty to defend). Because the Court finds that Hilton does not qualify as an insured, INA has no duty to defend.

tries v. Occidental Petroleum Corp., 662 F.Supp. 1002, 1005 (D.Nev.1984) (applying Nevada law); Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 623 P.2d 981, 983 (1981) ("[u]nder well settled rules of contract construction a court has no power to create a new contract for the parties which they have not created or intended themselves").

No Nevada case addresses the meaning of the term "real estate manager." However, the Louisiana Court of Appeal in Savoy v. Action Products Company considered the meaning of the term "real estate manager" as a part of an insurance policy provision substantially similar to the one in the instant case.[3] Savoy v. Action Products Company, 324 So.2d 921 (La.Ct.App.1975), cert. denied, 329 So.2d 463 (La.1976). The court reasoned that "a 'real estate manager' is simply one who manages real estate for another" and that a manager, as defined by Websters 3d International Dict. 1372 (3d. ed. 1966), is "one who 'conducts, directs or supervises something.'" Savoy v. Action Products Company, 324 So.2d 921, 923 (La.Ct.App. 1975), cert. denied, 329 So.2d 463 (La.1976).

■■■ The Court joins several other courts in finding that the term "real estate manager" is not ambiguous. See Savoy, 324 So.2d at 923; Bewig v. State Farm Fire and Casualty Ins. Co., 848 S.W.2d 521, 522 (Mo.Ct. App.1993); Fireman's Fund Ins. Co. v. Vordermeier, 415 So.2d 1347, 1349 (Fla.Dist.Ct. App.1982), petition dismissed, 421 So.2d 67 (Fla.1982). Accordingly, the Court will consider the term in its usual and ordinary meaning. Dickenson, 877 P.2d at 1061; Ellison, 797 P.2d at 977.

■■■ Plaintiff asserts that they are entitled to summary judgment based on the lack of coverage since Hilton cannot establish itself as an insured under the term "real estate manager." While the question of the meaning of "real estate manager" is a question of law for the Court, whether Hilton falls within that definition is a question of fact. Savoy, 324 So.2d at 924.

Plaintiff further asserts that Hilton cannot qualify as a real estate manager because its duties, the breaches of which are the subject of the state court lawsuits, derive solely from its status as a hotel operator. Plaintiff cites several cases to support its argument.

In Savoy, the Louisiana Court of Appeal considered whether a lessee propounded any evidence to indicate that she qualified as a real estate manager. Savoy, 324 So.2d at 924. The court concluded that the acts the lessee performed were merely affirmative duties required of every lessee, consistent with her obligations under the law of lease, and did not fall within those of a "real estate manager." Id. Other courts have similarly rejected attempts to qualify lessees as "real estate managers." See, e.g., Bewig v. State Farm Fire and Casualty Insurance Co., 848 S.W.2d 521, 522 (Mo.Ct.App.1993) (landlords' daughter mere tenant since plaintiff did not establish evidence that daughter was acting on behalf of landlord as "real estate manager" so as to be covered under landlords' policy); Jackson v. East Baton Rouge Parish School Bd., 348 So.2d 739, 741 (La.Ct.App. 1977) (Department of Public Safety was lessee and not real estate manager for School Board, even though Department managed real estate in some manner, because it did so to serve its own purposes and not on behalf of school board); Parr v. Head, 442 So.2d 1234, 1236–37 (La.Ct.App.1983) (finding that tenant was not a real estate manager for owner's house, even though tenant agreed to make all repairs to house, since landlord agreed not to increase rent in return); see also Simmons v. State Farm Fire and Casualty Ins. Co., 607 So.2d 1080, 1085 (La.Ct. App.1992) (usufructuary not "real estate manager" under policy since no evidence presented that usufructuary managed property for benefit of daughter beyond that of normal duties of usufructuary when daughter held proprietary interest in property and was named insured).

Similarly, in Olympic, Inc. v. Providence Washington Ins. Co., the Alaska Supreme

---

**3.** The phrase at issue in Savoy provided that an insured includes the following: "Any person (other than an employee of the named insured) or organization while acting as Real estate man-

ager for the named insured." Savoy v. Action Products Company, 324 So.2d 921, 923 (La.Ct. App.1975), cert. denied, 329 So.2d 463 (La.1976).

Court considered whether a construction company which leased property to a tenant qualified as a real estate manager in a policy provision similar to the one at issue in this case. *Olympic, Inc. v. Providence Washington Ins. Co.*, 648 P.2d 1008, 1013 n. 9 (Alaska 1982). The Alaska Supreme Court ruled that the lessor did not qualify as a "real estate manager" because the rights and obligations required under the lease were not substantially different from those required of every lessor. *Id.* Mississippi law is in accord. *See California Union Ins. Co. v. City of Walnut Grove, Mississippi*, 857 F.Supp. 515, 523 (S.D.Miss.1994) (city which leased building to clothing manufacturer did not qualify as "real estate manager" even though it maintained and repaired the building, since maintenance and repairs were undertaken for the city's own benefit and incidental benefit to manufacturer not conclusive) (applying Mississippi law).

 These cases support the proposition that a person or organization cannot qualify as a "real estate manager" if that entity's rights and obligations do not differ from the duties imposed upon it by operation of law or if that entity undertook such obligations for its own benefit.[4]

Plaintiff correctly asserts that Nevada law imposes upon hotel operators broad duties with regard to the protection of its guests. *See, e.g., Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 864 P.2d 796, 799 (1993) (hotel has duty to provide adequate security); *Joynt v. California Hotel & Casino*, 108 Nev. 539, 835 P.2d 799, 801 (1992) (hotel owes duty to maintain premises and maintain reasonably safe environment); *Early v. N.L.V. Casino Corp.*, 100 Nev. 200, 678 P.2d 683, 684–85 (1984) (hotel may owe duty to provide sufficient number of servants to afford reasonable protection to visitors), *overruled in part, Moody v. Manny's Auto Repair*, 110 Nev. 320, 871 P.2d 935 (1994) (abolishing landowner liability based solely on common law, designations of invitee, licensee, and trespasser in favor of general standard of reasonableness; status of land entrant can be considered but it is not dispositive).

 Hilton responds that it undertook obligations towards Tailhook that were independent of its duties as a hotel-casino operator. These obligations include the provision of security for the hospitality suites, the maintenance of separate suites for separate squadrons, and the allowance of Tailhook's provision of its own beverages in common areas of the hotel. However, the Court finds these obligations consistent with the obligations imposed upon hotel operators in light of the number in attendance and the size of the convention space. *See, e.g., Joynt*, 835 P.2d at 801. They do not fall within the duties of a real estate manager. *Savoy*, 324 So.2d at 924. Furthermore, to the extent that such obligations were for the benefit of Tailhook, that benefit was incidental to the benefit Hilton received from the attendees and guests of the hotel during the convention. *See, e.g., California Union Ins. Co.*, 857 F.Supp. at 523 (municipality not "real estate manager" since maintenance and repairs of building were undertaken for city's own benefit and incidental benefit to clothing manufacturer not conclusive).

Defendants also offer the agreement between Tailhook and Hilton (the "Convention Agreement") as evidence that Hilton undertook additional obligations in its dealings with Tailhook. In their Responses to the First Set of Interrogatories, Defendants admitted that the Convention Agreement constituted a mere lease. The obligations imposed upon Hilton in the Convention Agree-

---

4. The cases cited by Defendant stand for the same principles. *See Scottsdale Ins. Co. v. Homestead Land Dev. Corp.*, 1992 WL 453356, 1992 U.S.Dist. LEXIS 21915 (N.D.Cal.1992) (summary judgment appropriate when corporate relationship of parent & subsidiary existed and no evidence adduced that entity was involved in real estate management); *cf. Hartford Ins. Co. v. State Farm Fire & Casualty Co.*, 630 So.2d 652, 655 (Fla.Dist.Ct.App.1994) (corporation which signed agreement with property owner obligating corpo- ration to the day-to-day management duties involved with developing property under venture including negotiating on behalf of owner not mere construction manager but real estate manager due to subject of agreement); *Fireman's Fund Ins. Co. v. Vordermeier*, 415 So.2d 1347, 1349–50 (Fla.Dist.Ct.App.1982), *petition dismissed*, 421 So.2d 67 (La.1982) (court-appointed receiver and company acting on receiver's behalf managed property for creditors and qualified as real estate managers).

ment are not substantially different from the affirmative duties required of every lessor, including maintaining and repairing the premises.[5] *Savoy*, 324 So.2d at 924; *California Union*, 857 F.Supp. at 522; *Olympic*, 648 P.2d at 1013.

■ Defendants finally assert that Exhibit A of the Convention Agreement may have obligated Tailhook to name Hilton as an additional insured. Even if Exhibit A were properly authenticated, *see supra* note 1, and even if the additional endorsement covered Hilton for the underlying actions, this does not raise a genuine issue of material fact as to whether Hilton is covered under the Tailhook Policy. Hilton's rights, if any, lie against Tailhook, not INA.

Defendants have shown no evidence indicating that Hilton was a real estate manager on behalf of Tailhook. Indeed, even the underlying complaints contain no allegations that Hilton performed "real estate management" activities on behalf of Tailhook. The Court finds that Defendants have failed to establish a genuine issue of material fact as to whether the Defendants qualify as a "real estate manager" under the clear, certain, and unambiguous terms of the Tailhook Policy.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion for Summary Judgment (# 26) is GRANTED;

IT IS FURTHER ORDERED THAT Defendants' Motion for Partial Summary Judgment (# 31) is DENIED.

---

5. Indeed, Nevada has codified these duties. Nev. Rev.Stats. § 118A.290 (landlord has duty to maintain dwelling unit in habitable condition, including providing for electrical lighting, adequate plumbing, appropriate fixtures, adequate number of garbage receptacles, as well as keeping buildings and grounds free from debris, filth, rubbish, garbage, rodents, insects and vermin, and keeping floors, walls, ceilings, stairways and railings maintained in good repair); Nev.Rev. Stats. § 118A.200 (detailing respective rights and duties of lessors and lessee with respect to rental agreement, including lessor's obligation to list services with dwelling rental, responsibilities of lessor as to payment of utility charges, and maintenance). *See also Turpel v. Sayles*, 101 Nev. 35,

692 P.2d 1290, 1292 (1985); *Horvath v. Burt*, 98 Nev. 186, 643 P.2d 1229, 1231 (1982).